NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5753-14T1

BARBARA HENNEBERRY,

 Plaintiff-Respondent,

v.

RICHARD HENNEBERRY,

 Defendant-Appellant.
________________________________

 Submitted April 5, 2017 – Decided July 10, 2017

 Before Judges Alvarez and Lisa.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Union County,
 Docket No. FM-20-1195-06.

 Saminski, Rodriguez & Papadopoulo, L.L.C.,
 attorneys for appellant (Stephanie O'Neill, on
 the briefs).

 Haber Silver & Simpson, attorneys for
 respondent (Karin Duchin Haber, of counsel;
 Jani Wase Vinick, on the brief).

PER CURIAM
 Defendant, Richard Henneberry, appeals the Family Part order

of July l0, 20151 denying his motion to eliminate his alimony

obligation or, alternatively, to reduce the obligation or conduct

a plenary hearing. The order also granted relief sought by

plaintiff, Barbara Henneberry, in her cross-motion, requiring

defendant to maintain a $300,000 life insurance policy naming her

as the beneficiary pursuant to the parties' Interspousal

Settlement Agreement (ISA). The order also ordered defendant to

pay $2000 to plaintiff's attorney.

 Defendant argues that the trial court erred in failing to

grant his application for termination of alimony by making

inadequate findings under N.J.S.A. 2A:34-23j(3), and by

erroneously considering assets he received as part of the equitable

distribution of property contrary to N.J.S.A. 2A:34-23j(4).

Defendant also argues that, in light of his good faith retirement

and the terms of the ISA, the court erred in requiring him to

continue to maintain a $300,000 life insurance policy. Defendant

further argues that the court erred in awarding a counsel fee to

plaintiff. Finally, he argues that the court abused its discretion

by failing to conduct a plenary hearing involving the issues of

1
 After the appeal was filed, the trial court entered an amended
order on September 21, 2015, which did not make any substantive
changes, but which had annexed to it a supplemental statement of
reasons for its decision.

 2 A-5753-14T1
alimony, life insurance and counsel fees. We are unpersuaded by

defendant's arguments and affirm.

 The parties were married on February 7, 1970. They were

divorced on June 29, 2007. At the time of their divorce, they had

two emancipated children. Both parties were represented by counsel

in the divorce action. Through negotiations, they arrived at the

agreement memorialized in the ISA, which was attached to and

incorporated in the Final Judgment of Divorce.

 Both parties were employed full time during the marriage. At

the time of the divorce, defendant was a firefighter earning a

yearly salary of approximately $95,000. He also had a side

business in construction, which included the occasional

purchasing, improving and reselling of homes. Plaintiff worked

as a teacher from 1987 to 2015, earning approximately $52,000 per

year at the time of the divorce.

 Defendant retired in March 2014 upon his attainment of age

sixty-five, the mandatory retirement age in the fire department

in which he was employed. Plaintiff attained age sixty-five in

March 2015, and retired on June 30 of that year, at the end of the

school term. When they retired, defendant's salary as a

firefighter was approximately $125,000, and plaintiff's teacher's

salary was approximately $63,000.

 3 A-5753-14T1
 Plaintiff had been diagnosed in June 2012 with stage four

ovarian cancer. The cancer metastasized, requiring surgical

intervention and a continuing course of chemotherapy. Although

she required medical absences from work totaling several months

in the years following her diagnosis, plaintiff continued her full

time employment as a teacher. This was a necessity for her because

the ISA required each party to be responsible for their own medical

insurance. By remaining employed full time, plaintiff continued

to receive medical insurance through her employer. Upon attaining

age sixty-five, she became eligible for Medicare.

 Defendant also experienced a health issue. He was diagnosed

in 2011 with papillary urothelial carcinoma, a form of bladder

cancer. Defendant asserted this diagnosis in a certification in

support of his motion, in which he also stated that he required

chemotherapy treatment every three months. Plaintiff did not

dispute defendant's diagnosis. However, defendant failed to

submit any medical documentation to establish that the condition

debilitated him or impeded his ability to continue working.

Indeed, defendant continued working full time in the very demanding

occupation as a firefighter for several additional years until his

mandatory retirement.

 The ISA requires defendant to pay permanent alimony of $1750

per month and to maintain $300,000 of life insurance coverage with

 4 A-5753-14T1
plaintiff as the beneficiary for as long as he continues to pay

alimony. If alimony is terminated, his insurance obligation would

be reduced to $225,000 until either party dies. In the event of

a reduction of alimony, "the life insurance on the alimony portion

($75,000.00) will be modified in proportion to said [alimony]

modification." The ISA also designated sixty-three years of age

as the agreed-upon age for defendant's "good faith" retirement.

 After defendant retired, he filed a motion asking the court

to terminate his alimony obligation and seeking reimbursement for

alimony he had paid after his retirement. He also sought counsel

fees. Defendant had unilaterally reduced the amount of his life

insurance coverage to $225,000, based upon his belief that his

alimony obligation would automatically terminate upon his

retirement. Plaintiff cross-moved to enforce her litigant's

rights under the ISA, requesting that the life insurance coverage

be restored to the $300,000 level required by the ISA, and for

counsel fees.

 Defendant failed to provide with his motion a prior or updated

Case Information Statement (CIS). For that reason, the court

denied defendant's motion without prejudice. The court also

concluded that the provisions of the ISA required continued life

insurance coverage in the amount of $300,000, notwithstanding

defendant's retirement, and ordered enforcement of that provision.

 5 A-5753-14T1
 On April 24, 2015, defendant filed a second motion. He sought

termination of his alimony obligation, reimbursement of alimony

paid since retirement, and authorization to reduce his life

insurance obligation to $225,000. He provided the court with only

his current CIS.

 Plaintiff again filed a cross-motion. She sought to sanction

defendant until he complied with the court's prior order by

providing proof that the life insurance had been restored to the

$300,000 level. Plaintiff included her own current CIS and her

prior CISs, and she also included defendant's prior CISs. Together

with her motion, plaintiff filed a certification pointing out many

items that were missing from the information submitted by

defendant. Significant among these omissions were that defendant

had inherited two properties. One was a condominium on a golf

course in Virginia. The other was a home near a college campus

in North Carolina. Apparently, the estate also included other

valuable assets. Defendant acknowledged that he was the

beneficiary of the estate, but contended that the homes and other

assets continued to be titled to the estate and that no

distribution had been made to him. He was the executor. However,

he failed to disclose why no distributions had been made to him

or to reveal the value of the assets, their income production or

 6 A-5753-14T1
income producing potential, or other information relevant to the

effect this inheritance had on his financial condition.

 Plaintiff also pointed out that defendant's CIS, which he had

not initially submitted, revealed that he had $232,091 in his bank

accounts, two vehicles with a combined value of $19,000, deferred

compensation accounts valued at $110,000, and no debt. Further,

it showed he was receiving $4587 per month in pension benefits and

$325 per month in Social Security benefits.

 At the time of the divorce, the parties' principal asset was

the marital home valued at approximately $700,000, and debt free.

The home eventually sold for $740,000. After the divorce,

plaintiff moved into a condominium, which she purchased for

$392,000, financed by a mortgage with a monthly obligation of

$1407. Conversely, defendant purchased a home for $243,000 in

cash, which he sold four years later for $640,000. He contended

that he spent more than $400,000 in making improvements and

converting the home to a two-family residence. He said it was his

intention to live there long-term and retire there, renting out

the second unit to supplement his retirement income. He contended

that an unsolicited and unexpected offer came along, so he sold

the home for $640,000. He provided no explanation as to the source

of the $400,000 spent on the home. He provided no documentation

to verify these asserted expenditures. It appears that he made a

 7 A-5753-14T1
substantial profit because he used these proceeds to purchase

another home for $522,000 in a cash transaction. The remainder

of the proceeds from the sale of the previous home was deposited

into a savings account.

 The parties agreed to waive oral argument and allow the judge

to decide the cross-motions on the papers. The court entered its

order on July 10, 2015, denying defendant's motion in its entirety,

granting plaintiff's requested relief regarding the life

insurance, and ordering defendant to pay $2000 in attorney's fees

on behalf of plaintiff.

 Defendant's claim that he is entitled to termination of

alimony based upon his good-faith retirement stems from his reading

of the ISA. However, as the trial court found, "nothing was

contained therein to indicate that alimony would automatically

terminate upon the Defendant reaching the age of 63." The trial

court was correct. The good-faith retirement age was inserted in

the ISA to confirm the acknowledgment by plaintiff that, if

defendant would continue working until at least age sixty-three,

his retirement would not be premature, but would be accomplished

in good faith, based upon his years of service and the customary

retirement age for firefighters. Indeed, defendant continued

working for two additional years until reaching age sixty-five,

when he was required to retire. There is no dispute that this was

 8 A-5753-14T1
a good-faith retirement. However, under the clear terms of the

ISA, a good-faith retirement did not trigger an automatic right

to termination of alimony or even a reduction in alimony.

 Under long established precedent, spousal support agreements

are subject to modification at any time upon a showing of

substantial and permanent changed circumstances. Lepis v. Lepis,

83 N.J. 139, 146 (1980). Alimony obligations "are always subject

to review and modification on a showing of 'changed

circumstances.'" Ibid. (quoting Chalmers v. Chalmers, 65 N.J.

186, 192 (1974)). When a modification application is made, the

court should examine evidence of the paying spouse's financial

status in order "to make an informed determination as to 'what,

in light of all of the [circumstances] is equitable and fair.'"

Id. at 158 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)

(alteration in original)).

 A party seeking modification of a prior order bears the burden

of making a prima facie showing of changed circumstances. Id. at

157. In a case such as this, where the supporting spouse seeks a

downward alimony modification, "the central issue is the

supporting spouse's ability to pay." Miller v. Miller, 160 N.J.

408, 420 (1999). Defendant's assets, whether acquired through

inheritance or accumulated through his own earnings, must be

considered in this analysis. In Miller, the Court explained:

 9 A-5753-14T1
 Although the supporting spouse's income earned
 through employment is central to the
 modification inquiry, it is not the only
 measure of the supporting spouse's ability to
 pay that should be considered by a court. Real
 property, capital assets, investment
 portfolio, and capacity to earn by "diligent
 attention to . . . business" are all
 appropriate factors for a court to consider
 in the determination of alimony modification.
 We have never suggested that the supporting
 spouse's income earned from investments should
 be barred from this calculus.

 [Id. at 420-21 (alteration in original)
 (citations omitted).]

 Further, the current alimony statute sets forth guidance and

factors to be considered when a modification of alimony application

is made. Pertinent here is N.J.S.A. 2A:34-23j(3) pertaining to

modification applications upon retirement when the obligor has

reached full retirement age, and where, as in this case, the

enforceable written agreement was established prior to the 2014

amendment to the alimony statute. This section requires

consideration of the obligee's ability to have saved adequately

for retirement, as well as eight specified factors to consider in

determining "whether the obligor, by a preponderance of the

evidence, has demonstrated that modification or termination of

alimony is appropriate." N.J.S.A. 2A:34-23j(3).

 The trial court gave full consideration to each of the eight

factors. The court noted that defendant had not been forthcoming

 10 A-5753-14T1
in submitting information and withheld critical information until

it was brought forward by plaintiff. This included, for example,

the inherited properties and substantial bank accounts. The court

listed in detail the basis for determining defendant's overall

financial status, and thus, his ability to continue paying the

alimony provided for in the ISA. The court also considered

plaintiff's financial circumstances and determined she had a

continuing need for the full amount of alimony provided for in the

ISA. The court concluded as follows:

 After reviewing the submissions of the
 parties including: the case information
 statements, parties' certifications as well as
 defendant's 2014 Income Tax Returns, and
 applying the factors pursuant to the new
 alimony statute, the Court finds that the
 defendant has not demonstrated by
 preponderance of the evidence that a
 modification or termination of alimony is
 appropriate in this case.

 If the Court were to grant a downward
 modification of alimony, or in the alternative
 terminates alimony, the Plaintiff would not
 be able to meet her living expenses, including
 her medical expenses and health insurance
 premium so desperately needed for her medical
 condition. The Plaintiff, unlike the
 Defendant, cannot resort to other sources of
 income that can be derived from other
 properties or businesses.

 The Court finds the plaintiff to be more
 credible than the defendant as he deliberately
 omitted information on both his original and
 amended case information statement[s]
 regarding his unearned income and assets.

 11 A-5753-14T1
 Moreover, the defendant did not deny
 plaintiff's assertions about his assets.
 Thus, based on the information provided to the
 Court, we find that the defendant has the
 ability to continue paying spousal support in
 the amount of $1,750 a month to the Plaintiff.

 Therefore, because the defendant is
 financially capable to continue paying spousal
 support and his financial circumstances upon
 retirement did not substantially change as to
 warrant a termination or modification of his
 alimony obligation to the plaintiff, the
 defendant's motion is hereby DENIED.

 We are satisfied from our review of the record that the

court's analysis of the relevant factors, as set forth in the

precedents we have mentioned and the current alimony statute, was

thorough and based upon competent evidence in the record.

Likewise, we are satisfied that the court's conclusion is well

grounded, supported by the evidence, and not an abuse of

discretion. We reject defendant's contention that the court failed

to properly weigh the factors required by N.J.S.A. 2A:34-23j(3).

 We also reject defendant's contention that the court

erroneously considered defendant's assets acquired through

equitable distribution in violation of N.J.S.A. 2A:34-23j(4).

These assets, although listed among the many other factors the

court considered, were only partially acquired through equitable

distribution. It was incumbent upon defendant to distinguish

between the portions so acquired and the portions acquired after

 12 A-5753-14T1
the divorce. Further, in the overall scope and magnitude of the

factors appropriately considered, these factors were relatively

minor, thus rendering harmless any potential error on this point.

 Reduction of the $300,000 life insurance obligation is tied,

by the terms of the ISA, to a termination or reduction in alimony.

Because we have determined that the trial court did not err in

refusing to terminate or reduce the amount of alimony, it follows

that the $300,000 life insurance obligation must remain in effect.

 We next address whether the court erred in refusing to conduct

a plenary hearing. Initially, we reject out of hand defendant's

contention that, based on language in Silvan v. Sylvan, 267 N.J.

Super. 578, 582 (App. Div. 1993), he is automatically entitled to

a plenary hearing based on his good faith retirement. In Silvan,

we observed "that in certain circumstances, good faith retirement

at age sixty-five may constitute changed circumstances for

purposes of modification of alimony and that a hearing should be

held to determine whether a reduction of alimony is called for."

Id. at 581 (emphasis added). We do not read Silvan as establishing

a bright line exception to the Lepis standard. A good faith

retirement is merely one factor to be considered in determining

whether a prima facie showing of substantial and permanent changed

circumstances has occurred, which would give rise to a

discretionary decision by the trial court of whether or not to

 13 A-5753-14T1
conduct a plenary hearing. Further, under the current alimony

statute, the relevant provision, N.J.S.A. 2A:34-23j(3), does not

provide for an automatic plenary hearing upon retirement.

 Family Part judges are accorded broad discretion in

determining whether to conduct a plenary hearing in modification

applications. The movant bears the burden of making a prima facie

showing of the required changed circumstances. Lepis, supra, 83

N.J. at 157. A plenary hearing is not required "when the material

facts are not in genuine dispute." Id. at 159. The moving party

"must clearly demonstrate the existence of a genuine issue as to

a material fact before a hearing is necessary." Ibid.

 Defendant contends that a genuine dispute existed with

respect to material facts, and the court erred by resolving these

disputes without hearing testimony. For example, defendant points

to several instances in the court's statement of reasons referring

to plaintiff as being more credible than defendant. Of course,

credibility determinations require live testimony. However, in

context, it is clear to us that the court was referring to the

fact that defendant was less forthcoming in the submission of

required information and withheld information that was readily

available to him, such as the value of the inherited properties.

We are therefore unpersuaded that the court improperly made

"credibility" determinations based on the papers alone.

 14 A-5753-14T1
 Most importantly, a disagreement as to certain facts does not

necessarily constitute a genuine issue of material fact. See

Barblock v. Barblock, 383 N.J. Super. 114, 124-25 (App. Div.),

certif. denied, 187 N.J. 81 (2006). In that case, we held that

the trial court did not err in refusing to conduct a plenary

hearing because the contradictory information provided in the

moving party's certification consisted of bald, conclusory

statements not supported by any documentation. Ibid. Accordingly,

those statements did not create a "genuine" issue of material

fact. Ibid. (citation omitted). Those principles apply in this

case. For example, defendant baldly denied that he continued to

be engaged in the house-flipping business and asserted, without

documentation, that he spent more than $400,000 improving the home

he purchased in 2010, and sold in 2014 for a substantial profit

when an unsolicited offer was made, and then turned around and

purchased for cash a much more expensive home, placing the balance

of the proceeds into a savings account. On the papers, such a

bald assertion was not worthy of constituting a genuine issue of

a material fact. The same can be said of the inheritance

information.

 We find no abuse of discretion in the court's refusal to

conduct a plenary hearing in these circumstances. The record

evidence, taken as a whole, supported the court's conclusion that

 15 A-5753-14T1
defendant failed to make the required prima facie showing of

substantial and permanent changed circumstances under the Lepis

standard.

 Finally, we address the $2000 counsel fee award. Contrary

to defendant's contention, the court considered all relevant

factors and rendered a very modest award. The court did not abuse

its discretion.

 Affirmed.

 16 A-5753-14T1