**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1703-17T2

PATRICIA WENZ,

      Plaintiff-Appellant,

v.

DEAN WENZ,

      Defendant-Respondent.

_____

> Argued October 24, 2018 – Decided November 8, 2019
>
> Before Judges Nugent and Mawla.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0831-16.
>
> Charles F. Shaw, III argued the cause for appellant (Pandolfe, Shaw & Rubino, LLC, attorneys; Jeff Thakker, of counsel; Charles F. Shaw, III, on the brief).
>
> Thomas W. Madden argued the cause for respondent.

The opinion of the court was delivered by

NUGENT, J.A.D.

This appeal involves a post-judgment motion in a Family Part action. Plaintiff, Patricia Wenz, appeals from an order that denied her motion to open discovery and modify the parties' Matrimonial Settlement Agreement (MSA). She also appeals the award of counsel fees to defendant, her ex-husband, Dean Wenz. Plaintiff contends defendant fraudulently withheld information about his pension benefits. She asserts the trial court erred by finding to the contrary without giving her the opportunity to take discovery to prove the fraud.

The parties acknowledged in the MSA that discovery was incomplete, there was an inherent risk in waiving further discovery, but despite this risk they had instructed their attorneys to memorialize their agreement to settle their outstanding issues. The MSA stated that information about the disability portion of defendant's pension was currently unknown, but plaintiff nonetheless agreed to accept a specified monthly payment for the share of defendant's pension she would have received in equitable distribution.

Because plaintiff's claims of fraud are speculative, and because the trial court did not abuse its discretion by denying post-judgment discovery, we affirm the order denying plaintiff's motion to modify the MSA. We vacate the award of counsel fees, however, because the trial court did not consider the parties' ability to pay and did not otherwise explain, adequately, the basis of its award.

I.

The parties presented these facts to the Family Part judge who denied plaintiff's motion. The parties divorced after thirty-nine years of marriage. When they divorced, their only child was emancipated. Plaintiff filed the divorce complaint in November 2015. The court entered the Judgment of Divorce (JOD) nine months later, in August 2016. The MSA the parties had signed was attached to the JOD.

The MSA included the following paragraphs relevant to this appeal.

> 1. <u>Incomplete Discovery</u>. Both parties acknowledge that discovery is incomplete. However, both husband and wife are fully familiar with the issues in dispute, as well as the assets and liabilities the[y] attributed to the marriage. The parties acknowledge that despite the incomplete discovery, they have instructed their attorneys to memorialize their agreement into this writing. Both parties have been advised of their right to seek further discovery and continue the divorce process. Both parties acknowledge their formal waiver to seek any further discovery and their willingness to enter into this Agreement, despite the inherent risk of waiving further discovery.
>
> 2. In signing this Agreement, the parties release his or her attorney from any liability or responsibility associated with this Agreement, for any reason, as neither attorney has had an opportunity to review completed discovery and that the discovery provided by the parties is limited. The parties recognize that their respective attorney only agreed to create this

3

Agreement based upon the parties assurance that these terms were fully acceptable to each party and that there was no need to seek further discovery or expend time or resources pursuing any further discovery. The parties acknowledge that neither attorney has provided any tax advice, nor does either attorney have any expertise in such matters and that the parties have been instructed to seek such advice from a qualified professional if needed.

. . . .

9. <u>Equitable Distribution/Alimony Payment</u>. The parties acknowledge that the husband has a Post Office Pension and a Department of Corrections Pension that are both in pay status. The parties acknowledge that a portion of the Dept. of Corrections pension is related to the husband's disability, although the portion is unknown. Despite the lack of complete discovery or information, the wife agrees to accept a monthly payment of [$1400] for her share of the husband's pensions that she would have received in equitable distribution. These payments shall be considered support in the event the husband attempts [to] discharge this obligation through bankruptcy. The parties acknowledge that these payments may be subject to tax or eligible for tax deduction as alimony.

. . . .

12. The parties acknowledge their waiver to further discovery, their right to a trial and are fully satisfied with their entry into this Agreement. The parties acknowledge that they are each of sound mind and not under the influence of any substance that might alter or inhibit their ability to fully understand this proceeding or the magnitude of all of the provisions of this Agreement. They further acknowledge that although

4

> this agreement was written in haste, at the Courthouse, on the day of their divorce, they have each had sufficient time to review it and that they each understand it and intend to fully comply with all of its terms and provisions.

Eight months after the divorce, plaintiff filed a motion seeking, among other relief, an increase in support and equitable distribution, one-half of an alleged award to defendant of back pay, and a period of discovery "to bring about full financial transparency." Plaintiff filed the motion because she had learned defendant had received a $250,000 lump sum pension payment from the New York State and Local Retirement System (N.Y. Retirement System). Although the motion was unopposed, the trial court denied it.

In its written decision, the court noted that a party seeking a modification of alimony has the burden of demonstrating a change in circumstances warranting relief from the support or maintenance obligations. The court also noted the party seeking such a modification must make a prima facie showing of changed circumstances to justify a plenary hearing. Finding "the parties addressed in their MSA the very issue [p]laintiff is raising"; finding the parties had waived discovery despite unknowns about defendant's pension; and finding "no indication [p]laintiff entered this agreement under fraud, duress, or coercion"; the court denied plaintiff's unopposed motion.

5

Several months later, defendant filed a motion for an order finding plaintiff in violation of litigant's rights. Defendant certified that contrary to a MSA provision that required the parties to fully cooperate with defendant's efforts to modify the mortgage on the former marital home, plaintiff had withdrawn her authorization for defendant's loan modification attorney to deal directly with the lender. Defendant's loan modification attorney certified plaintiff had contacted him and told him, among other things, she was angry about the outcome of her previous motion and the order that denied the relief she had requested. Plaintiff filed but withdrew a cross-motion seeking the same relief she had requested in her previous motion to modify the MSA.

The Family Part judge who heard the motion granted defendant the relief he had requested concerning his efforts to modify the mortgage. In addition, finding "[p]laintiff's good faith is questionable," the judge awarded defendant some of the counsel fees he had incurred.

The judge entered the order granting defendant's motion on September 22, 2017. Three days earlier, on September 19, plaintiff had filed another motion to modify the MSA. The same judge denied the motion and granted defendant's cross-motion for counsel fees. Plaintiff filed this appeal from the memorializing order.

A-1703-17T2

In support of her second motion seeking modification of the MSA and a period of discovery to obtain relevant documents from the N.Y. Retirement System, plaintiff alleged fraud rather than changed circumstances. She filed a certification in which she acknowledged that at the time of her divorce from defendant she knew he was receiving monthly pension payments from the N.Y. Retirement System and the United States Postal Service, as well as social security. She noted that in his case information statement (CIS), defendant represented he had no other pensions. He repeated those representations in a memorandum he had submitted to a settlement panel. Plaintiff asserted she relied on this information when she made the decision to forego additional discovery and sign the MSA.

Plaintiff certified defendant had received a lump sum payment of $251,276.09, which was reflected on one of his bank account statements as well as a retirement account statement. Plaintiff did not explain how she had come into possession of defendant's bank statement and retirement account statement. She merely stated, "I received both of these documents in 2017. Needless to say they were not given to me by the [d]efendant." Plaintiff asserted she was entitled to "half of that money in equitable distribution."

A-1703-17T2

Plaintiff also certified she had attempted to obtain relevant documentation from the N.Y. Retirement System, but was unable to do so without authorization from defendant. She suggested that discovery of the information would likely reveal defendant "knew probably more than the year before the [JOD] that he was receiving this lump sum from the State."

Defendant filed a cross-motion seeking, among other relief, sanctions for plaintiff's bad faith, an order compelling plaintiff to disclose under oath how she obtained the statements, which had been mailed to him, and counsel fees and costs. He argued that plaintiff was attempting to "skirt" her failure to move for reconsideration or appeal from the court's May 2017 order. He alleged plaintiff had stolen his bank statements and mail. He also alleged the issues were fully accounted for in the MSA and previously addressed in the court's May 2017 order.

Concerning the lump sum distribution, defendant averred:

> I did receive pension/disability monies in a lump sum, but it was all known at the time of our divorce. We had extensive discussions about the unknown quantity of what I might receive in the future, the fact that the disability portion would not be subject to equitable distribution, and [plaintiff] essentially waived any right to any distribution or receipt of additional pension monies . . . .

A-1703-17T2

In further support of his cross-motion, defendant included the certification of the attorney he retained to seek a loan modification on the former marital home. The attorney certified that after plaintiff withdrew her authorization for him to speak directly to the lender, she telephoned him. During the conversation, "[s]he specifically stated that she was angry at [defendant] for receiving a job-related injury settlement and not giving her any of the money, despite the fact that the [MSA] did not call for her receiving any of that money." According to the attorney's certification, plaintiff made the statements "[o]n or about August 15th, 2017."

In a reply certification, plaintiff explained that one day while in the marital home, she saw defendant's bank statement and annual pension statement opened on the bed, so she photographed them with her cellular phone.

The Family Part judge denied plaintiff's motion. The judge noted plaintiff's "request to reopen the terms of the MSA has previously been addressed." The court cited language in the previous order confirming the court "did not find [d]efendant's lump sum pension payment to be a change in circumstances warranting a modification of the [p]laintiff's alimony or equitable distribution." The judge also noted the finding in the previous order that "[p]laintiff's newly discovered information regarding the [d]efendant's financial

9

circumstances, namely his failure to mention a lump sum from his pension payment plan, was addressed in terms of the MSA and was, therefore, not a change in circumstances."

The court also determined plaintiff waived her right to further discovery "multiple times in the MSA." The judge noted the MSA went to great length to document the parties' knowledge that they were waiving further discovery and protecting their attorneys from liability. The judge also noted plaintiff's argument—defendant had failed to mention the lump sum payment—was refuted by the MSA's reference to the disability claim. Concluding plaintiff had failed to support her allegation that defendant committed fraud, the judge denied the motion to modify the MSA, compel documentation concerning defendant's pension, and compel defendant's New York counsel to turn over his file concerning defendant's disability payments.

The judge also exercised her discretion to deny post-judgment discovery. Concerning sanctions, the court awarded defendant some of the attorney's fees he had requested. Citing the authority for awarding attorney's fees found in Rule 4:42-9(a)(1), (fee allowance in family actions), N.J.S.A. 2A:34-23 (authorizing the court to award fees), and Rule 5:3-5 (authorizing the award of attorneys' fees in certain family actions), the court found defendant had satisfied the

requirements of the rules and statute. The court cited in its decision the factors enumerated in Rule 5:3-5(c) a court should consider when awarding fees. In addition, it cited case law requiring that a court presented with a fee application consider such factors as financial need, ability to pay, good or bad faith of a party, the nature and services rendered, and the reasonableness of the fees. Mani v. Mani, 183 N.J. 70, 94 (2005).

The court noted that both attorneys had submitted certifications that were compliant with the relevant rules and that the fees were reasonable. However, the court decided that [a]fter review of the [Rule] 5:3-5(c) factors and the Certification of Services," it should grant fees to defendant for all costs and fees associated with the filing. Although neither party had submitted a current CIS, the court found defendant had acted in good faith but plaintiff's good faith was questionable, particularly considering she had filed multiple motions for the same relief, some after her original motion was denied in May 2017. Moreover, defendant had been "mostly successful in his request for relief," and plaintiff had been "unsuccessful in her request for relief." The court concluded: "In total, the factors indicate that the [c]ourt should award [d]efendant counsel fees for this [m]otion." The court awarded defendant fees and costs of $3050.

II.

On appeal, plaintiff argues the Family Part judge erred by failing to modify the MSA based on defendant's failure to disclose on his pre-divorce CIS, the memorandum he submitted to a settlement panel, or the MSA, the lump sum payment he expected to receive. Plaintiff argues that, alternatively, the Family Part judge should have permitted discovery concerning the lump sum payment. Last, plaintiff argues the Family Part judge abused her discretion when she awarded defendant counsel fees.

Defendant insists the Family Part judge did not abuse her discretion. Rather, she properly found the MSA fully accounted for the pension issue plaintiff now raises, and plaintiff waived discovery concerning the issue. Defendant also contends the issue plaintiff now raises was previously decided and she did not appeal from the memorializing order.

III.

We begin with some fundamental principles that inform our review of the trial court's decision. "New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999). That is so because "[v]oluntary agreements that address and reconcile conflicting interests of divorcing parties

support our 'strong public policy favoring stability of arrangements' in matrimonial matters." Ibid. (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)). Thus, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith, 72 N.J. at 358).

Nonetheless, "'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).

> This leniency is derived from the terms of the marital agreement and the nature of some post-judgment issues, such as custody of children and financial support for the family, that may require modification of the marital agreement over the years as events occur that were never contemplated by the parties. Nevertheless, the court must discern and implement the common intention of the parties[,] . . . and enforce [the mutual agreement] as written[.]
>
> [Quinn v. Quinn, 225 N.J. 34, 46 (2016) (citations omitted.]

In cases where equitable reasons for applying "normal tenets of contract interpretation" do not exist, the Supreme Court has recognized that "[a] narrow exception to the general rule of enforcing settlement agreements as the parties intended is the need to reform a settlement agreement due to 'unconscionability,

13

fraud, or overreaching in the negotiations of the settlement[.]'" <u>Id.</u> at 46, 47 (quoting <u>Miller v. Miller</u>, 160 N.J. 408, 419 (1999)). Thus, "while spousal agreements are presumed valid, any agreement may be set aside 'when it is the product of fraud or overreaching by a party with power to take advantage of a confidential relationship.'" <u>Guglielmo</u>, 253 N.J. Super. at 541 (internal citation omitted).

A motion to modify the equitable distribution provisions in a property settlement agreement may be brought under <u>Rule</u> 4:50-1 entitled "Relief from Judgment or Order." <u>See</u> <u>Connor v. Connor</u>, 254 N.J. Super. 591, 601 (App. Div. 1992). The standard under <u>Rule</u> 4:50-1(f) "is quite different from the changed circumstances standard of <u>Lepis v. Lepis</u>, 83 N.J. 139, 145-49 (1980) which only applies to the modification of support." <u>Ibid.</u> (citing <u>Schwartzman v. Schwartzman</u>, 248 N.J. Super. 73, 77 (App. Div. 1991)). Rather, relief from a negotiated equitable distribution scheme "is not available absent exceptional and . . . compelling circumstances." <u>Ibid.</u> Because "[a] motion under <u>Rule</u> 4:50-1 is addressed to the sound discretion of the trial court," the court's decision to grant or deny the motion "will be left undisturbed unless it represents a clear abuse of discretion." <u>Hous. Auth. of Morristown v. Little</u>, 135 N.J. 274, 283 (1994).

Here, plaintiff has failed to demonstrate such exceptional and compelling circumstances as to persuade us the trial court abused its broad discretion by denying her motion. In her previous motion, she alleged defendant's pension payments had increased, which had resulted in the lump sum payment, and she was thus entitled to, among other relief, an increase in alimony. The court rejected that argument, so she now asserts defendant fraudulently withheld information about his pension. Her allegations of fraud, however, are speculative.

The MSA states expressly:

> The parties acknowledge that a portion of the Dept. of Corrections pension is related to the husband's disability, although the portion is unknown. Despite the lack of complete discovery or information, the wife agrees to accept a monthly payment of [$1400] for her share of the husband's pensions that she would have received in equitable distribution.

Plaintiff does not claim that, put on notice that defendant would be receiving a portion of his pension related to a disability, she made any inquiry about the nature of the disability itself: its inception, its duration, or the method by which the amount of disability would be computed. Rather than pursuing available discovery to determine these issues, and for reasons not entirely clear from the record, plaintiff chose to forego discovery, finalize the divorce, and

accept monthly payments of $1400 for the share of defendant's pension she would have received in equitable distribution.

Plaintiff's argument that she relied on defendant's CIS and a memorandum he submitted to a settlement panel is unavailing. Plaintiff produced no evidence that defendant knew anything more at the time he prepared those documents than when he signed the MSA.

Plaintiff argues that the time between defendant's execution of the MSA and his receipt of the lump sum payment is evidence defendant knew before signing the MSA the amount he would receive. In her challenge to the court's denial of her application, however, she implicitly concedes that only after seeing defendant's pension documents will she know when he knew about the lump sum and whether he committed fraud. Absent any other information concerning the nature of the payment, whether it resulted from a disputed proceeding, resulted from an increase in benefits as plaintiff once alleged, or how the lump sum was computed and agreed upon, plaintiff's allegations are merely speculative.

We thus turn to plaintiff's contention the court erred by not permitting her to take discovery concerning the lump sum pension payment to defendant. The discretion to grant or deny post-judgment discovery in family matters rests within the sound discretion of the trial court. Welch v. Welch, 401 N.J. Super.

16

438, 446 (App. Div. 2008). The parties seeking discovery are required to make a preliminary showing concerning its necessity. To permit unfettered post-judgment discovery would convert motion practice into unwieldy mini-trials resulting in lengthy delays, a situation Rule 5:5-4 was specifically adopted to avoid. Ibid.

Here, we find no abuse of discretion on the trial court's part, particularly because of the clear, unequivocal, repeated representations by plaintiff in the MSA that she was knowingly and voluntarily waiving any right to additional discovery.

## IV.

We turn to plaintiff's challenge to the trial court's award of fees to defendant. Rule 4:42-9 authorizes a court to award fees in family actions pursuant to Rule 5:3-5(c). Rule 5:3-5(c) requires a judge to consider the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were

incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award. Thus, in evaluating a fee application, a court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees. Mani, 183 N.J. at 94-95.

The court in Kelly v. Kelly, 262 N.J. Super. 303 (Ch. Div. 1992), explained the circumstances warranting the imposition of fee shifting in matrimonial matters when bad faith is demonstrated:

> Fees in family actions are normally awarded to permit parties with unequal financial positions to litigate (in good faith) on an equal footing. Anzalone v. Anzalone Bros.[,] Inc. and Anzalone, 185 N.J. Super. 481, 486-[8]7 (App. Div. 1982). With the addition of bad faith as a consideration, it is also apparent that fees may be used to prevent a maliciously motivated party from inflicting economic damage on an opposing party by forcing expenditures for counsel fees. This purpose has a dual character since it sanctions a maliciously motivated position and indemnifies the "innocent" party from economic harm. Fagas v. Scott, [251 N.J. Super. 169, 194, 197-200 (Law Div. 1991).]
>
> [Id. at 307.]

Here, in awarding fees, the court acknowledged it was "not in a position to make any assumptions regarding [the parties'] financial circumstances." The court noted plaintiff's good faith was questionable. Finally, the court noted defendant's relative success in requesting relief, in contrast to plaintiff, who had been relatively unsuccessful in requesting relief. The court's analysis was inadequate to make an award of fees to defendant.

The court was aware from the record that defendant had received a lump sum payment of $250,000. Moreover, the court was aware from the MSA that plaintiff had received virtually nothing in equitable distribution other than a future payment to transfer her interest in the marital home to defendant and the $1400 monthly payment she would receive from defendant's pension payments. Those factors suggest a disparity in financial positions that in and of itself was a basis for either denying counsel fees or requiring the parties to submit additional financial information.

Moreover, unlike plaintiff's conduct when she attempted to thwart defendant's refinancing the marital home, there was no evidence plaintiff filed her motion in bad faith. It is not insignificant that defendant could have easily resolved questions about the nature of his lump sum payment by producing relevant documents. He produced no such documents in response to either of

plaintiff's motions. Thus, though the trial court exercised its discretion in denying plaintiff post-judgment discovery, that does not resolve the question of whether plaintiff pursued such discovery in good or bad faith.

For the foregoing reasons, we vacate that portion of the court's order awarding attorney's fees to defendant. We do so without prejudice to defendant to refile the application, supported by documentation relevant to his financial condition and the parties' good or bad faith, including the nature of the lump sum payment he received, how it came about, and when he first applied for it. If plaintiff opposes the motion based on ability to pay, she must also file current financial information. Upon receipt of the required information from both parties, the court should be in a position to make an accurate determination about whether defendant is in financial need, whether plaintiff has the ability to pay, and whether plaintiff acted in good or bad faith in pursuing her motion. Mani, 183 N.J. at 94-95.

Affirmed in part and vacated in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-1703-17T2