**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0441-19T2

H.S.,

     Plaintiff-Appellant,

v.

M.S.,

     Defendant-Respondent.

_____

          Submitted May 11, 2020 – Decided June 26, 2020

          Before Judges Geiger and Natali.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1792-17.

          Park & Caporrino LLP, attorneys for appellant (Jill Sunjung Park, on the briefs).

          Jeffrey Marc Bloom, attorney for respondent.

PER CURIAM

Plaintiff H.S.[1] and defendant M.S. were married in 2014 and divorced in 2017. One daughter, K.S., now age five, was born of the marriage.

Plaintiff appeals from two Family Part orders contending that the court committed error in: 1) failing to conduct a plenary hearing and amend the parties' Property Settlement Agreement (PSA) to address her need to travel overseas with K.S. as a result of her work obligations; 2) refusing to deem defendant's failure to provide a timely response to her travel requests as waiver of any objection or, alternatively, to direct defendant to watch their daughter in her absence; 3) retaining K.S.'s passport; 4) denying her request for nanny expenses; 5) failing to address her request for defendant to produce proof of life insurance; and 6) awarding defendant counsel fees. For the reasons that follow, we remand for further proceedings.

I.

As part of the parties' divorce decree, they entered into a September 11, 2017 PSA. Among other issues, the PSA addressed support and maintenance, equitable distribution of the parties' assets, and the requirement for defendant to provide a $500,000 life insurance policy with K.S. as the sole beneficiary. The

---

[1] We use initials to protect the minor's privacy.

A-0441-19T2

PSA also memorialized that the parties would have joint legal custody of their daughter with plaintiff having sole physical custody.

The parties also agreed in Article XXII, entitled "Custody and Visitation", to a highly specific visitation schedule consistent with the parties' current practice whereby defendant would continue to care for their daughter twice a week from 4:00 p.m. to 8:00 p.m., with overnight visits commencing once K.S. turned four years old. The overnight visit schedule contemplated further modification once the parties' daughter entered school.

Further, under paragraph seven of the same Article in a subsection entitled "Vacation Time", the parties agreed that:

> Wife and Husband are permitted to take the minor child on vacations each year for up to three (3) seven (7) day periods, which can be either consecutive or non-consecutive. The parties agree to notify each other of such request no later than thirty (30) days prior to taking a planned vacation. The party going on vacation must provide the other party with a full itinerary of the trip at least 10 days before the same. The itinerary is to include travel dates, departure and arrival times, airline information, hotel information, and contact information while the child[] [is] away. The foregoing applies to vacations taken in the continental United States. Either party may travel with the child outside the United States provided that the non-traveling party consents to same in writing prior to the trip.

A-0441-19T2

With respect to support and maintenance, Article XXIII required defendant to pay plaintiff "$1500 per month until K.S. is emancipated or reaches the age of 22." Defendant also agreed to be "equally responsible" for supplementary costs in addition to the $1500 support payments including "daycare costs [until K.S. "attends elementary school"], medical costs, [and] extracurricular activities." As to these expenses, defendant agreed to reimburse plaintiff "within two . . . weeks of being furnished a receipt."

In April 2019, defendant filed a motion to enforce litigant's rights to address an incident in September 2018 when plaintiff traveled outside of the country with K.S. without defendant's consent, as well as alleged unilateral decisions made by plaintiff in hiring a nanny and changing their daughter's daycare facility, and her purported refusal to comply with the PSA's visitation provisions.

Plaintiff did not respond to the application and the court entered an order on May 24, 2019:  1) precluding plaintiff's travel with K.S. outside the United States without defendant's prior written approval; 2) requiring plaintiff to surrender K.S.'s passport and precluding its release without mutual consent or a court order; 3) directing all parties to comply with the PSA regarding overnight parenting time; and 4) denying defendant's request for attorney's fees.

A-0441-19T2

Plaintiff moved to vacate the May 24, 2019 order under Rule 4:50-1, or for reconsideration in accordance with Rule 4:49-2, claiming that defendant, despite being aware of her correct address, failed to serve properly the motion. She also sought to modify the PSA to obviate the need to obtain defendant's consent before traveling with their daughter outside the United States as a result of her new employment obligations which required international travel. In the alternative, defendant sought an order that required defendant to respond to her travel request within two days, or any objection be deemed waived, and that defendant agree to care for their daughter while she traveled for business. She further requested defendant pay fifty percent of outstanding nanny expenses and the costs associated with cancelled airline tickets for a previously scheduled trip to Korea.

In support of her motion, plaintiff submitted a June 17, 2019 certification in which she attested that her failure to respond to defendant's application "was purely inadvertent and not willful" as she changed her residence in May 2019 and defendant's notice of motion was not promptly forwarded to her new address. With respect to traveling overseas, she certified that although she "[does] not dispute that the PSA contains language to the effect that [she] would not travel overseas with our daughter without first obtaining [d]efendant's

5 <span>A-0441-19T2</span>

consent[,]" when she signed the PSA, "traveling overseas for work was not an issue." She stated that at the time she signed the PSA she did not "think that [d]efendant would use the provision to play games or force [her] to make concessions[,]" and that on one prior occasion defendant's refusal to consent to her travel with K.S. caused her to lose her job.

She also disputed defendant's bases for his objections to her travelling with K.S. In this regard, plaintiff certified that defendant's "alleged concern for [their daughter] taking such a lengthy trip, and [plaintiff's] alleged inability to carry luggage and care for [their daughter] simultaneously, [was] nothing more than a fake excuse" because she had already traveled alone to Korea with their daughter while married, and that defendant's concerns about parenting time "appear to be manufactured [and] for litigation purposes."

Plaintiff further certified that defendant has not been paying his fifty percent share of the cost for their daughter's nanny in accordance with the PSA. She noted that defendant was in arrears for those expenses in the amount of $3250 as of May 31, 2019. She concluded that defendant "simply ignores [her requests] . . . [and she is] forced into making these decisions alone because he is not responsive . . . and many of these decisions are time-sensitive."

A-0441-19T2

Defendant opposed plaintiff's application and cross-moved to enforce litigant's rights. He contended that plaintiff "provided a completely inaccurate rendering of the facts as to the service of the motion upon her, and . . . blames [him] for the fact that she did nothing." In his July 31, 2019 certification, he then stated it was "incredible that the [p]laintiff seeks to change [the] PSA to allow her to leave the country with [their] daughter giving [him] only two (2) days to consent" as the PSA required at least thirty days' notice for requesting vacation time even within the United States. Defendant further stated that plaintiff's request for reimbursement of the fees associated with cancelling the plane tickets to Korea should be denied as she "made plans without consulting [him]."

As to daycare and nanny expenses, defendant certified that he was current with his share of daycare payments but noted that plaintiff "unilaterally changed the daycare without any consultation[,]" she "engaged a nanny without [his] input or consent[,]" and a nanny "was not contemplated by [the] PSA." Defendant also certified that he has "a policy of life insurance in the amount of $500,000" naming K.S. "as the primary, and only, beneficiary." He finally stated that plaintiff "was resistant to [his] exercising overnight parenting time, which ultimately necessitated the filing of [his] motion in April 2019" and

7

requested counsel fees in light of plaintiff filing "an application which is clearly lacking in the true facts or veracity, and is intentionally misleading" as well as plaintiff's "lack of good faith . . . her lack of candor, and the filing of an unnecessary and harassing application."

After hearing oral argument on August 16, 2019, the court vacated the May 24, 2019 order under Rule 4:50-1(f). As to the merits of the parties' motions, the court advised the parties that it would prepare a written decision "that will go to the meat of [the] PSA" issue.

The court issued two orders on August 16, 2019 and September 3, 2019 that granted in part and denied in part certain of the relief requested by the parties. Specifically, in the August 16, 2019 order, the court addressed the travel issue in paragraph two by stating that plaintiff "is permitted to travel outside the United States without the prior written approval of the [d]efendant and [p]laintiff must inform [d]efendant of [p]laintiff's travel plans within [fourteen] days of the date of departure." It also denied plaintiff's request "to modify the [PSA] and to remove the provision thereof that requires [p]laintiff to obtain the [d]efendant's written approval before traveling outside the United States with the parties['] minor child." The court also denied plaintiff's request that

defendant provide an answer to plaintiff's travel request within two days, or any objection would be deemed waived.

The court then ordered that if plaintiff was traveling outside of the country, defendant "be given the right of first refusal for overnight parenting time until [p]laintiff's return", and if defendant objected to plaintiff's travel and agreed to watch K.S., he would provide plaintiff "with name and telephone number of anyone watching [K.S.]."

In enforcing the parenting time schedule contemplated by the PSA, both orders contained a footnote stating that since "[t]he parties, each represented by counsel, negotiated the terms of the [PSA,] . . . the parties[] must conform to the weekly parenting time schedule set forth."  The court's legal conclusions for its parenting time ruling stated:

> Courts look favorably upon such agreements because their consensual and voluntary nature allows divorced couples to reach accommodations, resolve their differences, and assure stability in the post-divorce relationship. [Konzelman v. Konzelman, 158 N.J. 185, 194 (1999)].  The main objective of courts enforcing contractual relationships is to carry out the mutual intent of the parties.  Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006).  Accordingly, absent any of such circumstances, there is "no legal or equitable basis" to reform the parties' agreement.  Miller v. Miller, 160 N.J. 408, 419 (1999).

In granting defendant's request for $4260 in counsel fees, a second footnote present in both orders provided in relevant part that "[t]he court, in its discretion, may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under [Rule] 1:10-3, although any allowance made based on an enforcement motion is still subject to the provisions of [Rule] 4:42-9."

The court also denied plaintiff's request for reimbursement of the costs for K.S.'s nanny, ordered defendant to reimburse plaintiff $500 for the costs incurred by plaintiff in cancelling airline tickets to Korea, and granted defendant's request to enforce the PSA and the court's May 24, 2019 order. Finally, the court ordered that K.S.'s passport be surrendered to the court.

On September 3, 2019, the court issued another order to correct a "typographical error." Specifically, the order amended paragraph two to provide that plaintiff "is permitted to travel outside the United States with [K.S.]" without prior written approval of defendant provided plaintiff informs defendant of such plans within fourteen days of the departure date. No other substantive changes were contained in the September 3, 2019 order.

The scope of our review of a Family Part order is limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). We generally defer to the Family Part's fact-finding because of the court's "special expertise" in family matters and ability to make credibility determinations. <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 N.J. 420, 448 (2012). We defer to a judge's findings of fact unless they lack support in the record or are inconsistent with the substantial, credible evidence. <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co.</u>, 65 N.J. 474, 483-84 (1974). We likewise defer to the Family Part on decisions that are committed to the trial court's exercise of discretion. <u>Milne v. Goldenberg</u>, 428 N.J. Super. 184, 197 (App. Div. 2012). However, we owe no special deference to the court's "interpretation of the law and the legal consequences that flow from established facts." <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995). Also, if the "court ignores applicable standards, we are compelled to reverse and remand for further proceedings." <u>Gotlib v. Gotlib</u>, 399 N.J. Super. 295, 309 (App. Div. 2008).

Concerning property settlement agreements, we note that "[s]ettlement of litigation ranks high in the pantheon of public policy." <u>N.H. v. H.H.</u>, 418 N.J. Super. 262, 279 (App. Div. 2011). This principle "is particularly true in

matrimonial matters, where settlement agreements, being 'essentially consensual and voluntary in character[,] . . . [are] entitled to considerable weight with respect to their validity and enforceability' in equity, as long as they are fair and just." Ibid. (alterations in original) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "Voluntary agreements that address and reconcile conflicting interests of divorcing parties support our 'strong public policy favoring stability of arrangements' in matrimonial matters." Konzelman, 158 N.J. at 193 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)). Thus, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith, 72 N.J. at 358).

Further, "'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). "The equitable authority of courts to modify property settlement agreements executed in connection with divorce proceedings is well established." Miller, 160 N.J. at 418 (citing Conforti v. Guliadis, 128 N.J. 318, 323 (1992)). Further, "a party seeking modification of a judgment, incorporating a [settlement agreement] regarding custody or visitation, must meet the burden of showing changed

circumstances and that the agreement is now not in the best interests of a child." Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003).

The deference we typically afford trial courts in family matters presupposes, of course, that the court made sufficient factual findings in accordance with Rule 1:7-4. That Rule requires that a judge "by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." R. 1:7-4. "When a trial court issues reasons for its decision, it 'must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). "[A]n articulation of reasons is essential to the fair resolution of a case." O'Brien v. O'Brien, 259 N.J. Super. 402, 407 (App. Div. 1992). When a judge does not properly state his or her findings and conclusions, a reviewing court does not know whether the judge's decision is based on the facts and law or is the product of arbitrary action resting on an impermissible basis. See Monte, 212 N.J. Super. at 565.

"Naked conclusions do not satisfy the purpose of [Rule] 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (l980). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Giarusso v. Giarusso, 455 N.J. Super. 42, 53-54 (App. Div. 2018) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008)). Failure to do so therefore "constitutes a disservice to the litigants, the attorneys and the appellate court." Ricci v. Ricci, 448 N.J. Super. 546, 575 (App. Div. 2017) (quoting Curtis, 83 N.J. at 569-70).

### III.

Here, despite stating that it intended to "issue a written opinion within the next couple of days," the court resolved the parties' motions by way of the August 16, 2019 and September 3, 2019 orders. Neither order, however, was accompanied by an oral or written statement of reasons that addressed in a meaningful fashion the plaintiff's requests for relief. As a result, we are unable to determine the factual and legal basis for the court's decisions. The orders are also internally inconsistent.

For example, paragraph three of the September 3, 2019 order denied plaintiff's request to amend the PSA. That paragraph, however, follows

14

paragraph two that grants plaintiff's request to leave the country with K.S. without defendant's prior written consent on fourteen days' notice, which clearly modified the PSA. We also cannot determine the legal or the factual basis for the court's decision to amend the PSA to permit plaintiff to leave the country with K.S. in this fashion. Specifically, we cannot discern if the court made its decision on a changed circumstances and best interests of the child standard, or some other basis, and therefore remand for further explication by the trial court.

Nor did the court's orders address specifically the text of Article XXII, paragraph seven of the PSA, which by its plain terms, addresses travel in the context of vacation, not work-related instances. While the parties appeared in their certifications to have interpreted that provision to apply to non-vacation travel as well, in its apparent modification of that paragraph, the court did not address the specific requirements regarding the traveling parent's obligation to provide a detailed itinerary, including hotel and other contact information. We stress that nothing in this opinion should be construed as to our view regarding the trial court's ability to restrict travel with the minor child under a best interest and changed circumstances analysis, as appropriate. We simply require a more detailed explanation of the basis for the court's decision.

15

Further, the September 3, 2019 order, despite permitting plaintiff to travel without defendant's consent, continued the retention of K.S.'s passport by the court. Putting to one side the difficulties in scheduling travel as permitted by paragraph two while the court maintains possession of the child's passport, the August 16, 2019 and September 3, 2019 orders fail to address specifically the mechanism for return of the passport. Assuming the provisions of the May 24, 2019 order apply on the issue, that would require formal motion practice or consent of defendant to return the passport, a process that would appear to make travel on fourteen days' notice as permitted in paragraph two of the September 3, 2019 order a practical impossibility. On remand, the court should clarify this issue as well.

Substantively, the order does not identify the basis for continued retention of K.S.'s passport, such as concerns that plaintiff will abscond permanently with the child, or if plaintiff's actions in September 2018 when she left with the child without defendant's explicit consent formed the basis for such relief. Again, we do not pass upon the propriety of a trial court maintaining possession of a parties' or child's passport in appropriate circumstances. Here, however, we cannot determine the court's reasoning, particularly considering its determination in paragraph two.

16

In addition, the court provided no explanation for its denial of plaintiff's request for reimbursement of $3250 for her nanny's expenses. Again, we cannot discern whether the court accepted defendant's explanation that the plaintiff incurred these expenses contrary to the PSA or on some other basis.

Likewise, both the August 16, 2019 and September 3, 2019 orders awarded defendant $4260 in attorney's fees without explanation, other than a statement in a footnote that "[t]he court, in its discretion, may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under [Rule] 1:10-3, although any allowance made based on an enforcement motion is still subject to the provisions of [Rule] 4:42-9."

The court did not discuss the Rule 4:42-9 or RPC 1.5 factors or explain its reasoning in awarding attorney's fees or the amount ordered. Additional fact finding is necessary on this issue as it appears the court granted plaintiff partial relief and also denied defendant's fee request related to his initial motion in aid of litigant's rights. Because we cannot evaluate whether the court's exercised discretion in awarding the fees was "premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amount[ed] to a clear error in judgment," Masone v, Levine, 382 N.J. Super. 181, 193 (App. Div. 2005), we are similarly constrained to vacate that portion

of the August 16, 2019 and September 3, 2019 orders as well. See R.M. v. Supreme Court of N.J., 190 N.J. 1, 12-13 (2007) (vacating and remanding counsel fee award where judge failed to explain how or why he arrived at award); City of Englewood v. Exxon Mobile Corp., 406 N.J. Super. 110, 125-26 (App. Div. 2009) (vacating and remanding attorney fee award where record was devoid of analysis of relevant considerations outlined in RPC 1.5(a) or explanation for the fee award).

Plaintiff also requested that defendant provide proof of insurance consistent with Article XXIII, paragraph six of the PSA. That relief was not addressed in either order. Further, although defendant contends that proof of such insurance was provided to plaintiff, the only evidence in the record on appeal are two pages of a portion of an application signed by defendant and a third page captioned "Information", that contains certain premium and coverage information but which is not entirely legible. The trial court should determine in the first instance if $500,000 in life insurance coverage was actually bound naming K.S. as the beneficiary. If defendant has an applicable policy in force, he should simply provide a copy of a declarations page, by way of example, to plaintiff on remand.

Finally, plaintiff maintains that the court erred in not conducting a plenary hearing to address the parties' intent behind paragraph seven of Article XXII. Plaintiff concedes, however, that she did not request a plenary hearing below and, as such, the issue is not properly before us. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) ("[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised go to the jurisdiction of the trial court or concern matters of great public interest." (Internal quotation marks omitted)). As we are remanding the matter for further factual findings, however, the court should consider the requirement for supplemental materials to address the concerns raised in our opinion and any attendant need for a plenary hearing consistent with the governing legal principles. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (A plenary hearing is necessary when the parties' submissions show "a genuine and substantial factual dispute."); see also Llewelyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015) (Plenary hearings are inappropriate when it "would adduce no further facts or information" after "[a]ll of the relevant material was supplied to the motion judge.").

To the extent we have not specifically addressed any of the parties' remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0441-19T2