IRVING C. SMITH, PLAINTIFF-APPELLANT-CROSS-RE-
SPONDENT, v. MARION E. SMITH, DEFENDANT-RE-
SPONDENT-CROSS-APPELLANT.

Argued February 23, 1976—Decided January 27, 1977.

*Mr. Monroe Ackerman* argued the cause for appellant-cross-respondent (*Messrs. Rudd and Ackerman,* attorneys; *Mr. Neil Braun* on the brief).

*Mr. Jerome C. Eisenberg* argued the cause for respondent-cross-appellant (*Messrs. Clapp and Eisenberg,* attorneys; *Mr. Jeffrey W. Lorell* on the brief).

The opinion of the court was delivered by

MOUNTAIN, J. The parties to this suit, husband and wife, entered into a separation agreement in 1965. Some six years later, on September 13, 1971, significant amendments to our divorce law became effective. *N. J. S. A.* 2A:34–1 *et seq.* In April, 1972 the husband instituted this action for divorce based upon an 18-month separation. He also sought judicial approval of the earlier agreement. The wife filed an answer and counterclaim. She demanded that the agreement be set aside and declared invalid as being unfair and unconscionable. She also sought alimony and an equitable distribution of marital assets pursuant to *N. J. S. A.* 2A:34–23. By an amendment to her counterclaim she requested a divorce on the ground of adultery. The trial court granted defendant a divorce on her counterclaim and denied plaintiff's prayer for a no-fault divorce. It further determined that equitable distribution was foreclosed by the prior agreement. Subsequent to that ruling, this Court decided *Chalmers v. Chalmers,* 65 *N. J.* 186 (1974), *Painter v. Painter,* 65 *N. J.* 196 (1974), and *Rothman v. Rothman,* 65 *N. J.* 219 (1974), cases interpreting, *inter alia,* various aspects of the equitable distribution statute. The wife thereupon moved for a new trial claiming that these decisions did in fact establish her right to equitable distribution. The trial court granted the motion and the Appellate Division denied the husband's application for leave to appeal this interlocutory order. The

husband then applied to this Court. We granted leave to appeal and heard argument in this case and in *Carlsen v. Carlsen,* 72 *N. J.* 363 (1976), also decided this day, in order to clarify the circumstances under which a separation agreement entered into before passage of the new divorce law may affect a spouse's later claim to equitable distribution.

Mr. and Mrs. Smith were married in 1938. From modest beginnings in the used-car business, Mr. Smith rose to considerable success as the proprietor of a Cadillac dealership in Elizabeth. The marriage was a stormy one, and as early as 1955 Mrs. Smith consulted an attorney about a divorce. It was not until 1965, however, after she learned that her husband was maintaining an establishment elsewhere, that she finally decided on a separation. She selected an apartment in Florida and arranged with her husband for support for herself and the youngest child, who was still unemancipated. At that time, Mr. Smith's gross annual income was $157,584. He was the proprietor of a thriving business and owned assets having a total value of $621,764. Mrs. Smith had no independent income, and her sole individual asset was a savings account in the amount of $909. She was in poor health (she later underwent several cataract operations) and unlikely ever to be self-supporting.

A formal agreement was prepared and executed by the parties on September 30, 1965. The instrument is characterized by the husband as a "property settlement agreement" and by the wife as a "separation agreement." It provides that "[t]he Parties have agreed to live separate and apart and desire by this Agreement to settle their property rights and obligations." In addition to provisions concerning such matters as the maintenance of separate dwellings, noninterference with one another and visitation rights, the agreement contained the following provisions for the benefit and support of Mrs. Smith and the child, Robert:

1. She was to receive one-half the value of the marital home, appraised at $35,720; she was also to receive

her personal belongings and furniture and the sum of $100 to buy linens for her new apartment;

2. Additionally she was to have monthly support payments of $405, with an upward adjustment to $440 in case of rent increase;[1]

3. There were to be annual payments of $200 for the purchase of Christmas presents and $500 to defray the cost of a summer vacation while Robert remained with Mrs. Smith;

4. All medical and dental bills were to be paid;

5. A "suitable automobile," was to be provided and maintained, including registration, fuel and insurance charges.

Paragraph Ninth of the instrument recites that the wife accepts the agreement in full and final settlement of all claims for support and maintenance.[2] In Paragraph Tenth the parties mutually released any and all claims they might have, or might thereafter have, against each other "for or by reason of any matter, cause or thing up to the date of the execution of this Agreement."[3] Paragraph Eleventh is a waiver of each party's right to share in the other's estate at death or to serve as executor or administrator. Paragraph

---

[1] By the terms of the agreement, $100 was intended for the support of Robert and was to cease when he became emancipated. Although that event has now occurred, Mr. Smith has continued to pay $445 each month to Mrs. Smith. The obligation to make these payments would cease were Mrs. Smith to remarry.

[2] This paragraph in its entirety reads as follows:
NINTH: The Wife acknowledges that the property settlements entered into between the Parties are in settlement of any and all rights she may have for support and maintenance, and that the terms of this Agreement are fair, adequate and satisfactory to her. The Wife further accepts these provisions in full and final settlement and satisfaction of all claims and demands for any other provisions for support and maintenance, and fully discharges the Husband from all such claims and demands.

[3] The provision in its entirety reads as follows:
TENTH: Except as herein otherwise provided, the Parties shall and do hereby mutually remise, release and forever discharge each

Twelfth provides that in the event the parties are divorced, the agreement shall be incorporated by reference in the decree; nevertheless, it shall not merge in the decree but shall continue to be binding on the parties.

Mrs. Smith's assertion of unconscionability as set forth in her answer and counterclaim was based on allegations that the agreement was drawn up unilaterally by Mr. Smith's lawyer; that she had been kept systematically in ignorance of her husband's financial position; and that although she had been represented by counsel, his assistance had been ineffective since he was uninformed as to Mr. Smith's financial condition and had been presented with the agreement on a "take-it-or-leave-it" basis. The trial court found against Mrs. Smith on this issue, holding that the agreement had been voluntarily entered into and was fair in its terms. The court consequently declined to set the arrangement aside; and viewing it as a property settlement agreement, held that it barred consideration by the court of any further distribution of marital assets. Finding the contract to have been a fair one, the court held that the parties were bound by it; however, considering the increased cost of living to be a "change in circumstances" for which the parties had not bargained, the court took this factor into account and increased the monthly support payments to $750. This Court's subsequent interpretation of the equitable distribution statute in *Painter v. Painter, supra*, 65 *N. J.* 196 (1974), however, convinced the trial court that while the agreement might be evidential upon the issue of equitable distribution of assets, it could not be deemed determinative; hence the court, as stated above, granted defendant wife's motion for a new

other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and equity which either of them ever had, now has, or may hereafter have against the other for or by any reason or any matter, cause or thing up to the date of the execution of this Agreement. It is the intention of the Parties that henceforth there shall be, as between them, only such rights and obligations as are specifically provided in this Agreement.

trial on the issue of equitable distribution. It is the propriety of this order which is now before this Court.

Since September 13, 1971, any litigant in a divorce action has been entitled to seek an equitable distribution of marital assets incident to the granting of a divorce. *N. J. S. A.* 2A:34–23. To what extent, if at all, should the existence of an earlier separation agreement affect this right?

Separation agreements are of various sorts. Here we consider only those aspects of such agreements as are concerned with property rights. Examined in this limited way, they appear to be essentially of two types, and may conveniently be referred to as support agreements and property settlement agreements.

Prior to the above mentioned date, no court of this State had power to transfer from one spouse to another any property interest other than "an allowance of money in periodical installments." *Calame v. Calame,* 25 *N. J. Eq.* 548, 549 (E. & A. 1874). The transfer of real estate in fee, of a lump sum of money or of other assets was beyond the power of any court. *Painter v. Painter, supra,* 65 *N. J.* at 213. Doubtless influenced by this fact, many pre-1971 agreements reflected this limitation. They made provision for support payments to the wife for herself and for any minor children in her custody. They often contained provisions dividing tangible personalty, as well as any jointly owned assets, including real estate held by husband and wife as tenants by the entirety. Very often such agreements went no further than this in dealing with the respective property interests of the parties. Such arrangements, for present purposes, may be referred to as support agreements. They essentially do two things: (1) provision is made for the support of the wife and children and, (2) interests in jointly held property are divided, each spouse's interest in his or her own property being otherwise left substantially untouched.

At the same time, many pre-1971 agreements went much further. They often provided for substantial transfers of assets — generally from husband to wife — often, but not

always, taking the form of transfers in trust. Such arrangements may be called property settlement agreements.

■ We now hold that where equitable distribution is sought pursuant to *N. J. S. A.* 2A:34-23, an earlier separation agreement will be a bar to such relief only if, and to the extent that, it can qualify as a property settlement, and can likewise be shown to have been fair and equitable. Only then can it be said to be the substantial equivalent of an equitable distribution of marital assets, sufficient to justify denial of such relief.

We readily concede that in many cases this distinction will be difficult of application. Many separation agreements contain both elements of support and of property settlement; provisions touching one or other of these categories can, however, generally be rather easily identified. This conclusion rests upon two interrelated bases. First, as we have said above, the Legislature has seen fit to grant any litigant in a divorce action, if heard on or after September 13, 1971, the right to seek equitable distribution of marital assets. Secondly, as is more fully developed in *Carlsen v. Carlsen, supra,* interspousal separation agreements, enforceable only in equity, remain subject "to the court's power to exercise continued supervisory control." *Schlemm v. Schlemm,* 31 *N. J.* 557, 580 (1960). We think the legislative purpose in affording means for effecting an equitable distribution of marital assets should receive strong judicial support. At the same time fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.

■ Tested by the standard described above it is clear that the contract before us is a support agreement and nothing more. It has none of the characteristics of a property settlement agreement. In maintaining his contention to the contrary, the husband urges that the lump-sum payment received by the wife in exchange for her interest in the marital home represented a distribution of her share of marital assets. The argument is unimpressive since by this transac-

tion the wife received only what was hers already; in effect, the husband bought out his wife's interest in the residence held by them as tenants by the entirety.

The husband further argues that Paragraph Tenth' of the agreement, by which each spouse released all rights in the property of the other, operates as a binding relinquishment of any right to equitable distribution. It is settled law that the scope of a release is determined by the intent of the parties, and that in general, claims arising after the date of delivery of the instrument are not covered by it unless explicitly mentioned, since they would not appear to have been within the contemplation of the parties. *Bilotti v. Accurate Forming Corp.*, 39 *N. J.* 184, 203–05 (1963). At the time Mr. and Mrs. Smith signed their agreement, courts had no power to make an equitable distribution of marital assets and neither party had any rights, inchoate or otherwise, in the individually owned property of the other, aside from dower, curtesy and right of quarantine. *Calame v. Calame, supra.* We agree with Mrs. Smith that she cannot be regarded as having released a right which she did not have and could not fairly have anticipated.

Since by our decision here we sustain the order of the trial judge in granting defendant's motion for a new trial on the issue of equitable distribution, and since the matter of support payments to the wife, whether or not called alimony, is inextricably interrelated with the question of equitable distribution, we direct that the amount of such support payments may also be reviewed by the trial court. *Painter v. Painter, supra,* 65 *N. J.* at 218; *Rothman v. Rothman,* 65 *N. J.* 219, 234 (1974); *Stern v. Stern,* 66 *N. J.* 340, 349 (1975). This raises an important issue as to the proper test to be applied in undertaking such review.

Ever since *Schlemm v. Schlemm, supra,* overruled *Apfelbaum v. Apfelbaum,* 111 *N. J. Eq.* 529 (E. & A. 1932), separation agreements, if found to be fair and just, have been specifically enforceable in equity. Sometimes in suits seeking such relief, the defense has been interposed that

changed circumstances should preclude the granting of this always discretionary remedy. Upon other occasions a plaintiff has affirmatively sought to be relieved from making such payments upon the ground that a change in circumstances justifies such relief. The court is then called upon to examine the nature and extent of the alleged change. It has heretofore been accepted doctrine that a greater showing of changed circumstances is needed if a change is to be made when the support payments have been determined by interspousal consent than when they have been settled by court decree. The leading case is *Schiff v. Schiff*, 116 *N. J. Super.* 546 (App. Div. 1971). There the court said,

A far greater showing of changed circumstances must be made before the court can modify a separation agreement than need be shown to warrant the court amending an order for alimony or support.
[116 *N. J. Super.* at 561]

Because, as we have just pointed out, support payments are intimately related to equitable distribution, and because we feel that trial judges should have the utmost leeway and flexibility in determining what is just and equitable in making allocations of marital assets, we think the foregoing rule should now be changed. Henceforth the extent of the change in circumstances, whether urged by plaintiff or defendant, shall be the same, regardless of whether the support payments being questioned were determined consensually or by judicial decree. In each case the court must determine what, in the light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements.

Remaining for consideration is the question of the date as of which assets available for equitable distribution should be identified and valued in a case of this sort. In *Painter v. Painter, supra,* 65 *N. J.* at 217–18, we construed the legislative formulation, "property . . . which was legally and beneficially acquired . . . *during the marriage*" (*N. J. S. A.* 2A:34–23 : emphasis added) to refer to the period commenc-

ing as soon as the marriage ceremony had taken place and ending on the day the divorce complaint was filed. But we made it clear that this choice of a termination date was dictated largely by pragmatic considerations. The public policy giving rise to the equitable distribution law, as we pointed out in *Rothman v, Rothman, supra,* 65 *N. J.* at 229, is at least in part an acknowledgment "that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership." Assets acquired by the joint efforts of the parties while the shared enterprise continues, should be, on its termination, eligible for equitable distribution. But the precise date on which the enterprise collapses — on which the marriage irretrievably breaks down — is generally impossible or extremely difficult to determine. The formulation of *Painter* was an attempt to avoid promulgating an unworkable rule.

Neither *Painter* nor *Rothman* involved a situation in which the parties had entered into a formal agreement accompanied by actual separation. The execution and delivery of such an agreement, or its inclusion in a judgment, would appear to be incontrovertible evidence that the marital enterprise is no longer viable. To regard the "duration of the marriage" for the purpose of equitable distribution as continuing beyond the date of such an agreement, accompanied by an actual physical separation of the parties, does not come within the spirit of our earlier decisions and is clearly irrational. This would appear to be true both in those instances where the agreement is entered into in conjunction with a judicial decree for separate maintenance, as in *Carlsen v. Carlsen,* 72 *N. J.* 363, *supra;* and where, as in the present case, the agreement is a purely private contract between the parties.

We hold, therefore, that when the parties to a divorce action have previously entered into an agreement of this nature, accompanied by separation in fact, the date at which the marriage will be held to have terminated, for purposes

of determining and valuing assets eligible for equitable distribution, will be the date of the agreement.

In many cases the property in the hands of each party will have changed in nature and value between the date of the separation agreement and the date of the divorce decree. If the changes are minor, they can either be ignored or any unduly adverse effects that a judgment of equitable distribution might have on the present circumstances of either party may be compensated for by adjusting the alimony provisions: that is, a husband whose assets have diminished since the date of the agreement may still be required to turn over to his wife her equitable share of the property he then held, but since his present circumstances may then be somewhat straitened compared to hers, this factor may be taken into consideration in relation to the award of alimony. Conversely, a husband whose assets have increased since the date of the separation agreement will not be required to divide the increase with his wife, but his present favorable situation will be a factor that may be considered in setting alimony. We can conceive of situations in which the change in one party's financial position may be so great that measures such as these would not be sufficient to do mutual justice; in such a case, a party must be permitted to apply to the court for appropriate equitable consideration of the special circumstances involved.[4] The distribution, though made belatedly, must still be equitable.

Such considerations, however, are not before us in the present case. Mr. Smith's assets, according to his own affidavit, totaled $621,764 on the date of the separation agreement and had increased to $1,036,152 on the date of filing

---

[4]The use of a past date for determining the value of assets available for equitable distribution will inevitably present difficulties in certain cases. It is to be remembered, however, that this will be a temporary phenomenon, since all separation agreements entered into after September 13, 1971, will presumably include provisions that will in one way or another be responsive to the respective parties rights to equitable distribution in the event of divorce.

the divorce complaint. A division of assets as of the date of the separation agreement, September 30, 1965, will clearly present no unusual difficulty; nor will it be inequitable as to Mrs. Smith, who moved to Florida after the agreement was executed and made no contribution thereafter to the increase in assets.

The trial court's order granting defendant's motion for a new trial is affirmed and the cause is remanded to that court for further proceedings consistent with what has been said above.

*For affirmance and remandment* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD — 7.

*For reversal* — None.