217 N.J. Super. 518 (1987)
526 A.2d 278
YVONNE DWORKIN, PLAINTIFF-RESPONDENT,
v.
HOWARD DWORKIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1987.
Decided May 21, 1987.
*520 Before Judges PRESSLER, BAIME and ASHBEY.
Betsy Rosenbloom argued the cause for appellant (Fox and Fox, attorneys; Arthur D. Grossman, of counsel; Betsy Rosenbloom, on the brief).
S. Philip Klein argued the cause for respondent (Ozzard, Rizzolo, Klein, Mauro, Savo & Hogan, attorneys; S. Philip Klein and Arthur D. Fialk, on the brief).
The opinion of the Court was delivered by ASHBEY, J.A.D.
Plaintiff Yvonne Dworkin and defendant Howard Dworkin were divorced by judgment dated January 30, 1986. Their property settlement agreement, dated January 21, 1986, was incorporated in the judgment. Following its entry, defendant moved for an order requiring plaintiff to convey to him her interest in the parties' St. Maarten condominium pursuant to the terms of the agreement. Plaintiff cross-moved for an order requiring defendant to pay certain bills and for a division of the 1985 rentals from the condominium. By order dated May 23, 1986, the Family Part judge determined that plaintiff was entitled to one-half of the condominium rentals and to payment of the disputed bills. Defendant then moved to require plaintiff to share in the 1985 condominium expenses. On June 20, 1986 this motion was denied. Defendant appeals both orders and we reverse.
We first focus on the circumstances concerning plaintiff's claim to a share of the 1985 condominium rentals. Under the agreement plaintiff had received title to the marital residence and defendant had received title to the condominium. At issue is the meaning of the following terms of the agreement:

*521 The parties jointly own a condominium located in St. Maarten (hereinafter referred to as "condominium"). The Wife shall convey her interest in the condominium to the Husband subject to all mortgages, liens and taxes. The Wife represents that she has no knowledge of any liens or mortgages on the condominium other than the mortgage held by Chase Manhattan. The Husband shall assume all responsibility for the condominium including but not limited to the mortgage, taxes, insurance, utilities, maintenance and repair. The Husband shall cause the Wife to be released from all liability under the mortgage and note (or bond) on the condominium or shall give the Wife an indemnification agreement holding the Wife harmless from all liability arising out of or in connection with such mortgage and note (or bond).
* * * * * * * *
The Husband and Wife shall and do hereby mutually remise, release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever both in law and in equity, which either of them ever had, now has or may hereafter have against the other upon or by reason of any matter, cause or thing up to the date of the execution of this Agreement, it being the intention of the parties that henceforth there shall be as between them only such rights and obligations as are specifically provided in this Agreement or any modification thereof. [Emphasis added].
In the papers supporting her cross-motion, plaintiff wife contended that her share of the 1985 condominium rentals was held by the condominium association agent and therefore was not subject to the subsequent marital agreement.[1] She urged that the asset represented part of her residual personal property. The balance of her certification respecting this issue recited equitable reasons for the order she sought but did not assert that the effect of the agreement as a whole was unconscionable.
As to plaintiff's claim concerning certain family debts which were not listed in the agreement, these included a cleaning bill for $800 (which defendant certified he was paying directly to the cleaner), housekeeper wages in the amount of $175 and a *522 dental bill of $1,230. (Defendant's certification that plaintiff incurred the dental bill some two weeks before execution of the agreement was supported by his proffer of the bill itself). In an unsupported certification plaintiff claimed that she had been unaware when the agreement was executed that the unlisted bills for which she now sought an order were unpaid because defendant misrepresented to her that they were paid. The agreement said:
The Wife warrants to the Husband that she has not heretofore incurred any obligations whatsoever for which the Husband or his estate may be or become liable. The Wife shall not at any time hereafter incur any debt or obligation for which the Husband or his estate may be or may become liable.
Defendant relied upon the plain language of the agreement as to both of plaintiff's claims. He further asserted that not only had he made no misrepresentations and been unaware of any dental bill but, more importantly, that the disposition of all marital bills had been the subject of settlement negotiation. This contention was corroborated by plaintiff's own handwritten modifications of the agreement concerning veterinarian, piano tuning and auto repair bills and the fact that plaintiff was represented by counsel during negotiations. The record does not contain a denial by plaintiff of defendant's statement that he was paying the cleaner or that the dental bill had been incurred by her just prior to the divorce and its existence was therefore more likely to be known to her than to him. Thus, plaintiff's bare assertion of defendant's misrepresentations concerning these two bills was not only unsupported, it was contrary to the objective evidence.[2]
The first order was entered after oral argument, but the question of a set-off for 1985 condominium expenses was left open. Subsequently, defendant certified that 1985 condominium *523 mortgage interest payments had more than offset the rentals, a conclusion with which plaintiff did not substantially disagree. She reiterated that defendant's pre-settlement conduct made any such offset inequitable and relied upon the "plain meaning" of the agreement to defeat defendant's claim for reimbursement.[3]
The motion judge denied defendant's second application without oral argument or reasons. Because we are convinced the first order was in error, we do not rule on the second.
We first agree with defendant that the plain meaning of the agreement did not entitle plaintiff to any back rent from the condominium nor to the payment by him of these household debts. There was no language qualifying the rights or obligations of either party in these respects. The agreement was final, covering all outstanding disputes between the parties. See Schlemm v. Schlemm, 31 N.J. 557, 582-83 (1960).
In support of her argument that the agreement was ambiguous and that the ambiguity should be resolved in her favor, plaintiff states:
It seems reasonable that when a dispute arises as to the meaning and application of the terms of a property settlement agreement, the Court will apply these principles of fairness and equity in determining the application of the agreement. Cf. Edgerton v. Edgerton, 203 N.J. Super. 160, 171 (App.Div. 1985); Goodpasture v. Goodpasture, 115 N.J. Super. 189, 196 (Ch.Div. 1971).
While these general principles are indisputable, we are not persuaded that the trial court's duty to scrutinize marital agreements for fairness requires it to insert new terms because one party later suggests that a few changes would have made the agreement fairer. See Smith v. Smith, 72 N.J. 350, 359 (1977). Of course, any agreement may be set aside when it is the product of fraud or overreaching by a party with power to take advantage of a confidential relationship or is unconscionable. *524 See Schiff v. Schiff, 116 N.J. Super. 546, 561 (App.Div. 1971) certif. den. 60 N.J. 139 (1972); Petruccio v. Petruccio, 205 N.J. Super. 577, 581 (App.Div. 1985). In the special context of family litigation, our cases hold that only settlement agreements which are fair and equitable "... fall within the category of contracts enforceable in equity." Petersen v. Petersen, 85 N.J. 638, 642 (1981). Nonetheless, courts have labored diligently to effectuate the "... strong public policy favoring stability of arrangements." Smith v. Smith, supra, 72 N.J. at 350. See also Faherty v. Faherty, 97 N.J. 99, 108 (1984) (litigants bound by arbitration clause in equitable separation agreement); Davidson v. Davidson, 194 N.J. Super. 547, 553-54 (Ch.Div. 1984) (oral property settlement and support agreement binding). "Accordingly, we approach the spousal agreement in this case with a predisposition in favor of its validity and enforceability." Petersen v. Petersen, supra, 85 N.J. at 642. Thus we have held that relief from the equitable distribution provisions of agreements which are incorporated in divorce judgments is subject to the standards of R. 4:50. See Palko v. Palko, 73 N.J. 395, 397-98 (1977); Ganther v. Ganther, 153 N.J. Super. 226, 231 (App.Div. 1977); Berlin v. Berlin, 200 N.J. Super. 275, 279-80 (Ch.Div. 1984).[4]
Viewed in the light of these principles of marital agreement construction, see Carlsen v. Carlsen, 72 N.J. 363, 370-71 *525 (1977), we are satisfied that plaintiff's unsupported certifications, including her circumstantially uncorroborated claim of misrepresentation, were not sufficient to warrant either an order in her favor or a hearing to resolve a factual dispute. While it is axiomatic that all material factual disputes must be resolved on testimony, Hallberg v. Hallberg, 113 N.J. Super. 205, 208 (App.Div. 1971), the applicant nevertheless has the threshold burden to establish a prima facie case to obtain a hearing on a motion for relief from the terms of an agreement. See Shaw v. Shaw, 138 N.J. Super. 436, 550-41 (App.Div. 1976). As the Supreme Court held in Lepis v. Lepis, 83 N.J. 139, 159 (1980):
Without such a standard, courts would be obligated to hold hearings on every modification application.... In determining whether a material fact is in dispute, a court should rely on the supporting documents and affidavits of the parties. Conclusionary allegations would, of course, be disregarded.
While the Lepis standard was devised in the context of motions to modify a support obligation, we are satisfied it applies in cases such as this. Whether plaintiff's cross-motion was labeled as one for "enforcement," "interpretation" or "modification," its essence was an effort by one spouse to impose upon the other a few new obligations beyond those encompassed by their comprehensive marital agreement resolving the distribution of their entire marital estate.[5]
Contrary to the view expressed by the motion judge, we conclude that the burden is not upon the responding party to establish the moving party's express waiver as to each asserted *526 new obligation, but rather upon the moving party to establish with specificity the new obligation of the responding party and the reasons therefor. See Lepis v. Lepis, supra, 83 N.J. at 157. We are further satisfied in this case that plaintiff did not meet that burden.
Reversed.
NOTES
[1] With respect to plaintiff's contention that she had been surprised by defendant's instruction to the agent not to distribute any rentals, plaintiff's filed complaint suggests the contrary. In pertinent part, it says:

F. In April, 1985, defendant misappropriated funds due on a rental of a condominium owned by the parties in St. Maarten, the Netherlands Antilles and refused to pay to the plaintiff her share of the proceeds thereof.
[2] At argument neither counsel focused on the bill for housekeeping. Plaintiff said the bill was incurred while defendant was residing at the home. Defendant admitted residing there for one week after the divorce while plaintiff went to Florida. If plaintiff sought these wages for that week and under those circumstances, her certifications lacked specificity.
[3] Neither party placed the tax consequences of the condominium ownership on the record. Nothing in this record answers the question of when the rental agent was advised to withhold rentals from plaintiff, except defendant's certification that he so advised the agent after the settlement.
[4] The Uniform Marriage and Divorce Act, sec. 306(b), reprinted in 9A U.L.A. 91, 135-36 (1979), has adopted a standard which provides that all terms of an agreement, except for support, custody or visitation, may be made non-modifiable by the parties and treated as contract terms, subject to court review for unconscionability. (See Jacobs v. Great Pacific Century Corp., 104 N.J. 580, 587 (1986) (failure to specify obligation in its favor creates an implication adverse to contracting party)). Current legislation to limit judicial discretion to modify support orders is pending. See Federal Omnibus Budget Reconciliation Act of 1986 (P.L. 99-509) enacting sec. 466(a)(9) of the Social Security Act to provide that effective October 21, 1986, all states must implement a program for non-retroactive modification of child support orders in order to comply with the federal child support enforcement program. See Senate Bill # 2420 and Assembly Bill # 33068.
[5] While the value of the marital estate is not a part of this record, defendant, now a victim of Parkinson's Disease, had previously earned in the range of $200,000 a year. Defendant certified that the condominium had been purchased for $157,500 with a $50,862 down payment and that he had contributed $34,432 and plaintiff contributed $16,430 to that down payment. Neither the value of the marital residence in Watchung nor the value of the bank accounts each retained is in the record. Defendant had alimony and child support obligations, including a responsibility to maintain life insurance in the initial amount of $306,000 to protect plaintiff's right to support over the next nine years.