**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3969-22

JASMINE REYES,

     Plaintiff-Respondent,

v.

DAVID LEWIS,

     Defendant-Appellant.

_____

Submitted October 22, 2024 – Decided March 10, 2025

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1113-18.

Hunnell Law Group, LLC, attorneys for appellant (Stephanie C. Hunnell and Caitlin Holland, on the briefs).

Nadya M. Zerquera, attorney for respondent.

PER CURIAM

In this post-judgment matrimonial litigation, defendant David Lewis appeals from a March 8, 2023 Family Part order denying his cross-motion to modify the parties' 2018 judgment of divorce (JOD), and from a July 14, 2023 Family Part order denying his motion for reconsideration. Defendant sought a modification of parenting time and child support based on changed circumstances. He also sought to reform the JOD and order plaintiff, Jasmine Reyes, to produce an accounting of the proceeds from the sale of the marital residence. After reviewing the record in light of the parties' arguments and governing legal principles, we conclude defendant has failed to establish that the trial court abused its discretion, and thus affirm.

I.

We discern the following pertinent facts and procedural history from the record. Plaintiff and defendant married in April 2016. They have two children, one born in December 2015 and the other in December 2017. In January 2018, plaintiff learned defendant was having an affair which resulted in him having a third child.

In early 2018, the parties communicated regarding marital finances and possible reconciliation. According to defendant, plaintiff gave defendant a final default judgment of divorce/dissolution agreement (Agreement), which included

2

terms to "sign[] over the marital residence to [p]laintiff, shut[] down [defendant's] business and sign[] over [defendant's] unemployment benefits to [p]laintiff."

On March 12, 2018, the parties' marital residence, which they purchased in October 2016, was transferred via quitclaim deed from both parties to plaintiff alone. After financing the home for over a year, plaintiff could no longer afford it and sold the home in October 2019 for a $6,659 profit.

On June 4, 2018, the parties divorced. Both parties were unrepresented. Their JOD incorporated the Agreement. The JOD states: "no equitable distribution or alimony was sought in this matter and none was awarded." The Agreement does not address the distribution of physical assets, but rather focuses on the children. It provides that "[p]laintiff shall have primary legal custody" of the children and defendant shall exercise parenting time on "Tuesday[] afternoon through Wednesday afternoon and every other weekend[.] Alternate holidays and birthdays." The Agreement further provides that defendant "shall pay to the plaintiff $500 per week for child support."

The parties disagree as to whether the incorporated Agreement was "negotiated." According to defendant, "he did not negotiate any of the terms but rather went along with what [p]laintiff requested, out of a certain level of guilt

3

due to his cheating while [p]laintiff was pregnant." According to plaintiff, the court provided the Agreement and it was "completed by [both parties] TOGETHER."

The parties agree that they have not consistently followed the JOD's parenting time schedule. In April 2022, plaintiff filed a motion to enforce certain provisions of the JOD as well as modify child support and parenting time. Plaintiff asserted defendant had only been making partial child support payments and stopped paying altogether in December 2021. In September, defendant filed a cross-motion seeking to vacate and modify the JOD. Among other things, defendant requested to modify custody, the parenting time schedule, and his child support obligation. He also asked for equitable distribution of the proceeds from the sale of the marital residence. Defendant further argued that the JOD was unfair, inequitable, and unconscionable, and not supported by the Child Support Guidelines.

The trial court heard oral argument on February 24, 2023. Both parties were represented. That same day, the trial court issued an order, which it later amended on March 8. The court granted plaintiff's request to enforce the JOD

4

but denied her requests to modify parenting time and child support.[1] The trial court denied defendant's cross-motion to modify child support based on the parties' 2018 incomes and their current incomes. The court also denied defendant's request to vacate and modify the JOD, and to alter custody and parenting time.

Explaining its decision to deny the parties' requests to modify parenting time, the trial court reasoned:

> The parties' [A]greement, which was incorporated into their [JOD], provided for a parenting time schedule where [d]efendant would have the minor children on "Tuesday[] afternoon through Wednesday afternoon and every other weekend" and on "alternative holidays and birthdays." New Jersey has a strong public policy interest favoring the use of consensual agreements to resolve marital controversies.
>
> . . . .
>
> A judge must consider a request of modification in accordance with the procedural framework established by the New Jersey Supreme Court in Lepis. Lepis v. Lepis, 83 N.J. 139, 157-59 (1980). Under Lepis, the first question is whether the party seeking modification has made a prima facie showing of a change in circumstances. . . .
>
> Here, [p]laintiff seeks to modify the parenting time schedule to give [d]efendant parenting time with

---

[1] So far as the record reflects, plaintiff did not appeal the denial of her motion to modify the parenting time arrangement.

the children "from Wednesday [3:00 p.m.] through Friday [3:00 p.m.] and every other Saturday, [8:00 a.m.] to [3:00 p.m.], due to my work schedule." The stated justification, however, fails to present a prima facie case of changed circumstances under Lepis nor how the change in custody arrangement is in the best interest of the children adequate to justify modifying the present custody arrangements.

Regarding its decision to deny defendant's request to modify child support, the trial court explained: "[t]he only changed circumstances averred in [d]efendant's cross-motion is that, after consulting with an attorney, he was 'told the [JOD and incorporated Agreement] appears inequitable on its face.' This realization . . . does not constitute a prima facie showing of changed circumstances to justify revisiting the [A]greement and its terms." The court continued, "[t]he fact that [d]efendant entered into an agreement to pay child support in excess of the guidelines in exchange for other considerations such as a waiver of alimony by [p]laintiff alone does not render the agreement 'unjust, oppressive or inequitable' to justify the extraordinary relief afforded under [Rule] 4[:]50-1."

Regarding the proceeds from the sale of the marital residence, the trial court denied defendant's argument to subject the marital home to equitable distribution "for reasons set forth supra in ¶[]5(a)[,]" referring to the trial court's

6

aforementioned findings about <u>Rule</u> 4:50-1 untimeliness and the lack of changed circumstances to warrant modification of child support payments.

On March 28, 2023, defendant filed a motion for reconsideration, which plaintiff opposed. After the July 14, 2023 hearing—at which both parties were represented—the trial court denied defendant's motion. Regarding child support, the court found:

> As the entire purpose of the [d]efendant's motion in this matter was to lower, not raise[,] the children's child support entitlement from [d]efendant, it is clear that the proposed changes to the parties' agreements are not being sought for the children's best interest . . . The [d]efendant's contention that the [c]ourt erred by accepting the parties' mutually agreed to child support terms rather than calculating a child support obligation consistent with the Child Support Guidelines is without merit.

Regarding custody and parenting time, the trial court explained, "[d]efendant's cross-motion sought changes to custody because he believed his proposed schedule would be 'consistent with what we have been exercising . . .' but presented no justification to find this proposed change would be in the best interests of the children." Further, it stated, "while [d]efendant's current motion avers that the [c]ourt 'should not ignore the joint request of the parties to modify parenting time' . . . [the parties] could submit an executed consent order" to modify it. The court continued, "[i]n the present matter,

7

however, each party sought competing and conflicting changes to the current parenting time schedule."  As a result, the court decided that "neither party presented 'a prima facie case of changed circumstances.'"

Regarding the proceeds from the sale of the marital residence, the trial court found:

> Plaintiff previously certified that [d]efendant "agreed to give me the deed for the house" and that he "waived any rights to the proceeds of the house when it was sold." . . . The parties' [JOD] expressly states "no equitable distribution or alimony was sought in this matter and none was awarded."  For the reasons detailed <u>supra</u> in ¶[]1 [discussing defendant's understanding of the JOD and a lack of unfairness], there is no basis to set aside the parties['] [JOD] and entertain equitable distribution of the proceeds of the martial home years after the parties have been divorced.

This appeal followed.  Defendant raises the following contentions for our consideration:

> <u>POINT I</u>
>
> THE TRIAL COURT ABUSED ITS DISCRETION BY REFORMING ONLY ONE PROVISION OF THE PARTIES' 2018 FINAL DEFAULT JUDGMENT OF DIVORCE/DISSOLUTION AND DENYING DEFENDANT'S REQUEST TO REFORM OTHERS THAT ARE ALSO UNCONSCIONABLE AND THE RESULT OF OVERREACHING BY PLAINTIFF, WHILE RELYING SOLELY ON DEFENDANT'S VOIR DIRE AT THE UNCONTESTED HEARING.

POINT II

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE PARTIES' MUTUAL REQUEST TO MEMORIALIZE AND MODIFY PARENTING TIME, WHERE BOTH PARTIES CERTIFIED AND TESTIFIED THAT THE CUSTODIAL ARRANGEMENT AND PARENTING SCHEDULE THEY HAVE EXERCISED FOR FOUR (4) YEARS WAS NOT WHAT WAS MEMORIALIZED IN THEIR FDJOD.

POINT III

THE TRIAL COURT ERRED WHEN IT REFUSED TO REVIEW AND RESET CHILD SUPPORT RETROACTIVE TO THE DATE OF FILING, BECAUSE BOTH PARTIES REQUESTED THAT CHILD SUPPORT BE REVIEWED AND BECAUSE THERE WERE CHANGES OF CIRCUMSTANCES, INCLUDING DEFENDANT'S DE FACTO PARENTING SCHEDULE WHICH PROVIDED FOR 130 OVERNIGHTS AND WHERE DEFENDANT'S CHILD SUPPORT EXCEEDED DEFENDANT'S NET INCOME.

POINT IV

THE TRIAL COURT ERRED BY DENYING DEFENDANT'S REQUEST FOR PLAINTIFF TO ACCOUNT FOR THE NET PROCEEDS FROM THE SALE OF THE MARITAL RESIDENCE, WHEN THE PRO SE FDJOD WAS SILENT REGARDING EQUITABLE DISTRIBUTION.

9

II.

We begin our analysis by acknowledging the general legal principles governing this appeal. Importantly, the scope of our review of a Family Part order is limited. See Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016); Cesare v. Cesare, 154 N.J. 394, 411 (1998). We accord deference to Family Part judges due to their "special jurisdiction and expertise in family [law] matters." Cesare, 154 N.J. at 413. Our review is bound by the judge's findings so long as they are "supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)); Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016). We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent" with the evidence presented. Cesare, 154 N.J. at 412 (quoting Rova Farms, 65 N.J. at 484).

Likewise, "[t]he trial court's determination under [Rule 4:50-1] warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571

(2002) (quoting <u>Achacoso-Sanchez v. Immigr. & Naturalization Serv.</u>, 779 F.2d 1260, 1265 (7th Cir. 1985)).

## III.

We first address defendant's contention that the trial court abused its discretion in denying his motion to modify child support and equitable distribution under <u>Rule</u> 4:50-1(f). The trial court ultimately found defendant's <u>Rule</u> 4:50-1(f) motion was untimely. Defendant contends on appeal the trial court abused discretion by failing to make a determination on whether the Agreement was "fair and just" in accordance with <u>Edgerton v. Edgerton</u>, 203 N.J. Super. 160 (App. Div. 1985).

<u>Rule</u> 4:50-1(f) provides: "[o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: . . . (f) any other reason justifying relief from the operation of the judgment or order." Our Supreme Court has cautioned that "[c]ourts should use <u>Rule</u> 4:50-1 sparingly, in exceptional situations; the <u>Rule</u> is designed to provide relief from judgments in situations in which, were it not applied, a grave injustice would occur." <u>Hous. Auth. of Morristown v. Little</u>, 135 N.J. 274, 289 (1994). The Court added that "[n]o categorization can be made of the situations which would warrant redress

11

under subsection (f)" and, that its "very essence . . . is its capacity for relief in exceptional situations" where "its boundaries are as expansive as the need to achieve equity and justice." Ibid. (citation omitted).

An applicant's right to relief under Rule 4:50-1(f) depends on the totality of the circumstances, and the correctness or error of the original judgment is ordinarily an irrelevant consideration. In re Guardianship of J.N.H., 172 N.J. 440, 476 (2002). The movant must ordinarily show that the circumstances warranting modification are exceptional, and that enforcement of the order or judgment would be unjust, oppressive, or inequitable. Guillame, 209 N.J. at 484; D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022).

Furthermore, Rule 4:50-1(f) motions must be filed within a reasonable time. R. 4:50-2. A "reasonable time" is "as expansive as the need to achieve equity and justice." Ct. Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966). In Edgerton, we held the defendant had filed her motion to modify a divorce judgment and property agreement "within a reasonable time under the circumstances presented in this case. [Rule] 4:50-1(f)." 203 N.J. Super. at 174. In that case, the defendant had agreed to the divorce judgment which was unknowingly based on a mistake of law subjecting her sole property to equitable distribution. Id. at 173-74. This resulted in a potential $150,000 windfall to the plaintiff. Id. at

12

164. The defendant waited two years and eight months before she filed her motion. Id. at 173. The trial court denied the defendant's motion. Id. at 166-67. We reversed, stating "[w]hat is involved [here] is the court's unexercised power to determine the fairness of this particular agreement under the law regarding equitable distribution." Id. at 174.

Here, the parties' JOD and Agreement required defendant to pay $500 per week in child support. As we have noted, the JOD specifically stated: "no equitable distribution or alimony was sought in this matter and none was awarded." Defendant's cross-motion requested to:

> Vacat[e] and/or modify[] the [p]arties' [JOD] based on changed circumstances and pursuant to Rule 4:50-1(f) as follows:
>
> a. Modify[] child support utilizing the Child Support Guidelines, based on the parties' 2018 incomes, retroactive to the date of complaint;
>
> b. Modify[] child support utilizing the Child Support Guidelines, based on the parties' current incomes and circumstances, retroactive to the date of filing;
>
>      . . . .
>
> d. Compel[] [p]laintiff to provide proof of the proceeds received from the martial home and crediting same against any child support arrears.

In denying defendant's Rule 4:50-1(f) arguments, the trial court found:

With respect to the timeliness of [d]efendant's application, the [A]greement being challenged was entered as part of the parties' [JOD]. Plaintiff certified that, sometime after the agreement was executed, [d]efendant's child support payments "went from $2,000 to $1,500, to $1,000, to $750, to $500 and on December 4, 2021, he unilaterally decided to stop paying child support. . . ." Defendant took no action to modify this [A]greement until after [p]laintiff filed the present motion [to enforce and modify the JOD] on April 22, 2022, when [d]efendant filed the present cross-motion on September 8, 2022 seeking, for the first time, to revisit the parties' [A]greement. The realization that [d]efendant believes his current child support obligation is unaffordable and should be revisited coming nearly four years after the agreement was entered and nine months after [d]efendant ceased paying his child support obligations under that [A]greement render[s] the present motion to modify the [A]greement under [Rule] 4:50-1(f) untimely.

Furthermore, contrary to defendant's assertion, the trial court did address the fairness of the Agreement, stating:

A review of the equities under [Rule] 4:50-1(f) also does not factor the [d]efendant's claims as an application of subsection (f) requires "the demonstration of 'exceptional circumstances.'" . . .

. . . The fact that [d]efendant entered into an agreement to pay child support in excess of the guidelines in exchange for other considerations such as a waiver of alimony by [p]laintiff alone does not render the agreement "unjust, oppressive or inequitable" to justify the extraordinary relief afforded under [Rule] 4[:]50-1.

14

On reconsideration, the trial court again found defendant "presented no exceptional circumstances to justify relief under [Rule] 4:50-1 . . . [and] did not demonstrate that there was any fraud or mistake in the manner the [A]greement was executed." Further, the court reasoned, "the [A]greement was reached through arms-length negotiations with the [p]laintiff, and the [A]greement was a fair and equitable resolution to all the matters at issue in the parties' relationship."

We are satisfied the trial court's findings comport with the letter and spirit of the principles we acknowledged in <u>Edgerton</u>. Here, the trial court considered fairness, concluding the JOD and its incorporated Agreement were the result of the parties' negotiations and reached a "fair and equitable resolution." There is no claim as there was in <u>Edgerton</u> that the Agreement was based on a mistaken understanding of the law. In <u>Edgerton</u>, that mistake directly resulted in a potential windfall to the plaintiff in the amount of $150,000.

Furthermore, in <u>Edgerton</u>, the motion was made two years and eight months after the judgment of divorce was entered. In this case, defendant waited almost four years to raise his contentions and did so only in a cross-motion to plaintiff's motion. We find no abuse of discretion in the trial court's

determination that this is not an "exceptional situation[]" where "a grave injustice would occur" without relief. See Little, 135 N.J. at 289.

IV.

We next address defendant's contention the trial court erred in denying his motion to modify child support based on changed circumstances which, defendant asserts, require adjustments to comport with the Rule 5:6A Child Support Guidelines. Defendant argues there are four changed circumstances since the Agreement was adopted: (1) defendant's parenting time increased from 72 nights to 130 nights per year; (2) the birth of defendant's third child with a non-party; (3) plaintiff's alleged increase in income; and (4) defendant's child support obligation amounts to more than his net income. Defendant contends that under the Child Support Guidelines, he should pay $37 per week, instead of $500 per week.

Under N.J.S.A. 2A:34-23, the Family Part has the authority to modify child support "from time to time as circumstances may require." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting N.J.S.A. 2A:34-23). New Jersey courts "have interpreted this statute to require a party who seeks modification to prove 'changed circumstances.'" Id. at 536 (quoting Lepis, 83 N.J. at 157). The Family Part's consideration of "changed

16

circumstances" includes a change in the parties' financial circumstances, whether the change is continuing, and whether the parties' agreement "made explicit provision for the change." Ibid. (quoting Lepis, 83 N.J. at 152).

Importantly for purposes of this appeal, Rule 5:5-4(a)(4) provides that to obtain a modification of child support, "the movant shall append copies of the movant's current case information statement and the movant's case information statement previously executed or filed in connection with the order, judgment or agreement sought to be modified." Rule 5:5-4(a)(2) similarly requires that a motion to modify include a completed case information statement (CIS). Further, if the movant makes a prima facie showing of a substantial change of circumstances or other good cause, "the court shall order the opposing party to file a copy of a current case information statement." Ibid. See Palombi v. Palombi, 414 N.J. Super. 274, 287 (App. Div. 2010).

In this case, the trial court initially stated, "the only changed circumstance averred in [d]efendant's cross-motion is that, after consulting with an attorney, he was 'told the [JOD and incorporated Agreement] appears inequitable on its face.'" The court found that "[t]his realization . . . does not constitute a prima facie showing of changed circumstances to justify revisiting the [A]greement and its terms."

On reconsideration, the trial court amplified its initial ruling, finding defendant's "cross-motion was facially defective in providing the [c]ourt financial information to support [d]efendant's claim of changed financial circumstances." The court noted that Rule 5:5-4(a)(2) requires a CIS to be filed with a motion to modify child support and found that defendant's CIS "was incomplete, listing no information on Part C, Section 3 regarding [d]efendant's current earned income, and providing no current financial information regarding [p]laintiff for the [c]ourt's consideration."

We see no abuse of discretion in the trial court's finding that the CIS which defendant provided was incomplete and thus deficient. Because a properly completed CIS is required before a court may modify child support, defendant has not shown that the trial court abused its discretion in denying his cross-motion to reduce his child support obligations.

In reaching this conclusion, we acknowledge the record shows that defendant exercises parenting time on more nights than contemplated in the Agreement. The increase in actual overnight parenting time is relevant for purposes of calculating child support. The Child Support Guidelines provide in this regard that the child support award can be adjusted "to accommodate the [Parent of Alternate Residence's] fixed and variable expenses incurred while the

child is with that parent and the [Parent of Primary Residence's] reduced variable expenses while the child is not in that parent's household." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 14 (2024). We emphasize that nothing in this opinion should be construed to preclude defendant from filing a new motion to modify child support and, in the event he does, defendant would be expected to comply with all financial disclosure requirements.

V.

Defendant next argues the trial court erred by denying his request to "[v]acat[e] and/or modify[] the [p]arties' [JOD] based on changed circumstances . . . [to] [c]ompel[] [p]laintiff to provide proof of the proceeds received from the martial home and crediting same against any child support arrears." Since the Agreement and quitclaim deed are silent about equitable distribution of the martial residence, defendant asserts that he has not waived his interest in the property and is owed equitable distribution as credits to his child support arrearage.

"The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (internal quotation marks omitted). In terms of eligibility, the governing statute exempts

19

most gifts from equitable distribution, providing that "all such property, real, personal or otherwise, legally or beneficially acquired during the marriage or civil union by either party by way of gift, devise, or intestate succession shall not be subject to equitable distribution." N.J.S.A. 2A:34-23(h). However, "interspousal gifts or gifts between partners in a civil union couple shall be subject to equitable distribution." Ibid. "[W]here equitable distribution is sought pursuant to N.J.S.A. 2A:34-23, an earlier separation agreement will be a bar to such relief only if, and to the extent that, it can qualify as a property settlement, and can likewise be shown to have been fair and equitable." Smith v. Smith, 72 N.J. 350, 358 (1977).

We reiterate that in this instance, the JOD specifically stated, "no equitable distribution or alimony was sought in this matter and none was awarded." In rejecting defendant's argument to alter the JOD and include equitable distribution, the trial court in its initial ruling stated, "[c]ompelling [p]laintiff to provide proofs of the proceeds received from the marital home and crediting same against any child support arrears. DENIED for the reasons set forth supra in ¶[]5(a)." Section 5(a) addressed defendant's Rule 4:50-1 untimeliness and the lack of changed circumstances to warrant modification of defendant's child support payments.

On reconsideration, the trial court further explained:

> Plaintiff previously certified that [d]efendant "agreed to give me the deed for the house" and that he "waived any rights to the proceeds of the house when it was sold." . . . The parties' [JOD] expressly states "no equitable distribution or alimony was sought in this matter and none was awarded." For the reasons detailed <u>supra</u> in ¶[]1 [discussing defendant's understanding of the JOD and a lack of unfairness], there is no basis to set aside the parties['] [JOD] and entertain equitable distribution of the proceeds of the martial home years after the parties have been divorced.

We note that neither party disputes that the martial home was jointly purchased during their marriage and was deeded to plaintiff during the marriage. Those circumstances suggest the marital home would qualify as an interspousal gift subject to equitable distribution. <u>See</u> N.J.S.A. 2A:34-23(h).

Furthermore, the parties' Agreement constitutes a support agreement concerning their shared children, rather than a property agreement discussing assets. In <u>Smith</u>, our Supreme Court noted "where equitable distribution is sought pursuant to N.J.S.A. 2A:34-23, an earlier separation agreement will be a bar to such relief only if, and to the extent that, it can qualify as a property settlement, and can likewise be shown to have been fair and equitable." 72 N.J. at 358.

A-3969-22

That principle suggests that the parties' marital home is not automatically shielded from equitable distribution by the Agreement, which focused on the children, not marital property. However, in this instance, defendant brought his cross-motion under a changed circumstances theory.[2] It is unclear what change in circumstances occurred that would affect the status of the marital home. Defendant was clearly aware of the martial home in 2018 when the JOD was entered and did not seek equitable distribution. Indeed, as we have repeatedly noted, the JOD is explicit on this point. In these circumstances, we are unpersuaded the trial court abused its discretion in denying defendant's cross-motion to compel plaintiff to provide proof of the proceeds received from the martial home and to credit a share of those proceeds against defendant's child support arrearages.

## VI.

Defendant contends the trial court abused its discretion in denying his request to modify parenting time because there had been a substantial change in circumstances. Specifically, defendant asserts the change was "that the parties

---

[2] Plaintiff contends in her appeal brief that the doctrine of laches bars defendant from modifying the JOD. However, the record before us does not show that plaintiff raised laches to the trial court. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing claims that are not presented to a trial court are inappropriate for consideration on appeal).

had been exercising a different schedule, other than what was outlined in the [JOD]."

In Wilke v. Culp, we emphasized "a primary concern in determining questions of visitation and custody is the best interests of the child." 196 N.J. Super. 487, 497 (App. Div. 1984); see also Fiore v. Fiore, 49 N.J. Super. 219, 228 (App. Div. 1984) ("[P]arents should be warned . . . courts are interested primarily in a child's welfare and happiness, and only secondarily in the parents' rights of custody and visitation."). Accordingly, a party seeking modification of an existing parenting time order bears the burden not only of demonstrating changed circumstances but also that the current arrangement is no longer in the best interests of the child. Finamore v. Aronson, 382 N.J. Super. 514, 522-23 (App. Div. 2006); Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).

This analytical process is sequential. A party seeking modification must first show a change in circumstances that affects the welfare of the children. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K. v. F.K., 437 N.J. Super. 58, 62-63 (App. Div. 2014)). If the party makes such a showing, "the party is 'entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by

23                                                                    A-3969-22

modification of the existing custody order.'" Ibid. (quoting R.K., 437 N.J. Super. at 62-63 ); see also Lepis, 83 N.J. at 159.

Here, the Agreement gave defendant parenting time: "Tuesday[] afternoon through Wednesday afternoon and every other weekend[.] Alternate holidays and birthdays." Defendant requested a different parenting time modification than the one sought by plaintiff, stating: "[p]laintiff proposes that I have every Wednesday . . . to Friday, plus alternate Saturdays. However, I propose having the children every Wednesday . . . through Friday . . . and every other weekend. . . . This schedule[] is consistent with what we have been exercising."

The trial court in its initial ruling focused on plaintiff's request to modify parenting time. On reconsideration, the trial court found that "[d]efendant's cross-motion sought changes to custody because he believed his proposed schedule would be 'consistent with what we have been exercising . . .' but presented no justification to find this proposed change would be in the best interests of the children." The trial court added, "[w]hile [d]efendant's current motion avers that the [c]ourt 'should not ignore the joint request of the parties to modify parenting time[,]' . . . [the parties] could submit an executed consent order" to modify it. The trial court concluded, "[i]n the present matter, however,

each party sought competing and conflicting changes to the current parenting time schedule." As a result, the trial court decided "neither party presented 'a prima facie case of changed circumstances.'"

The record supports the trial court's finding that defendant in his cross-motion failed to provide information to meet his burden of demonstrating the Agreement's parenting time arrangement was no longer in the best interests of the parties' children. See Finamore, 382 N.J. Super. at 522-23; Lepis, 83 N.J. at 159. Although we might have used the parties' competing motions as an opportunity to hold a plenary hearing to revisit and update the parenting time schedule were it our decision to make in the first instance, we are not persuaded the trial court abused its discretion in rejecting defendant's argument for failing to address the best-interests standard. See Landers, 444 N.J. Super. at 319.

Relatedly, defendant argues the trial court abused its discretion in denying his request for joint legal custody due to changed circumstances, namely, that the parties had been following a different schedule than the one outlined in the Agreement. Further, defendant takes issue with the provision in the Agreement that provided plaintiff with "primary legal custody," claiming that term is "ambiguous" and that "there is no such thing as 'primary legal custody;' there is either sole or joint legal custody."

25                                                                    A-3969-22

In rejecting defendant's argument, the trial court incorporated its analysis of plaintiff's request to modify parenting time, finding plaintiff "fails to present a prima facie case of changed circumstances under Lepis nor how the change in custody arrangement is in the best interest of the children adequate to justify modifying the present custody arrangements." The trial court concluded, defendant "presented no justification to find this proposed change would be in the best interests of the children." Once again, we are not persuaded the trial court abused its discretion in concluding that neither party had established a prima facie basis for amending the Agreement. See Landers, 444 N.J. Super. at 319.

It is clear to us that both parties in their respective motions sought "competing and conflicting changes to the current parenting time schedule." Nothing in our opinion forecloses either party from filing a new motion for a change to the parenting time order, and in such an event either do, they should address the children's best interests and not rely solely on the fact that they have not been following the parenting schedule outlined in the Agreement. And, of course, the parties might agree to a parenting time arrangement that best serves the children's interests.

We turn next to defendant's contention the JOD's incorporation of the Agreement is unconscionable with regard to all three contested issues:  child support, parenting time, and equitable distribution.  It is well-established that separation agreements are generally enforceable if they are "fair and equitable" and "should receive continued enforcement without modification only so long as they remain fair and equitable." Lepis, 83 N.J. at 148-49.  N.J.S.A. 2A:34-23 recognizes a court's equitable power to modify a privately negotiated agreement, and provides:

> Pending any matrimonial action or action for dissolution of a civil union brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders. . . .  Orders so made may be revised and altered by the court from time to time as circumstances may require.
>
> [N.J.S.A. 2A:34-23.]

A separation agreement may be reformed in several circumstances, including when it is "unconscionable." Addesa v. Addesa, 392 N.J. Super. 58,

66 (App. Div. 2007) (citing <u>Dworkin v. Dworkin</u>, 217 N.J. Super. 518, 523 (App. Div. 1987)). Unconscionability occurs when there is "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." <u>Howard v. Diolosa</u>, 241 N.J. Super. 222, 230 (App. Div. 1990). Unconscionability requires: "(1) unfairness in the formation of the contract; and (2) excessively disproportionate terms." <u>Est. of Cohen ex rel. Perelman v. Booth Comput.</u>, 421 N.J. Super. 134, 157 (App. Div. 2011). "The first factor, procedural unconscionability, includes age, literacy, lack of sophistication, hidden or unduly complex contract terms and bargaining tactics. The second factor, substantive unconscionability, 'simply suggests the exchange of obligations [is] so one-sided as to shock the court's conscience.'" <u>Id.</u> at 158 (quoting <u>Sitogum Holdings, Inc. v. Ropes</u>, 352 N.J. Super. 555, 565 (Ch. Div. 2002)) (internal citation omitted); <u>D.M.C.</u>, 471 N.J. Super. at 27-28.

Regarding procedural unconscionability, in the matter before us, the trial court found: "[t]he executed document is titled 'Final Default Judgment of Divorce/Dissolution.' It further states . . . the marriage between the parties will 'be dissolved . . . .' There is nothing within the four corners of this executed

[A]greement that indicates that the parties were executing this in anticipation of reconciliation."  The court also noted "[the judge who entered the JOD] found that the [A]greement was 'entered into freely and knowingly by both parties.'"

On reconsideration, the trial court amplified its ruling, stating:  "[w]hen the parties appeared before [the judge who entered the JOD], she explained on the record that . . . '[defendant] is to pay [plaintiff] $500 per week in child support.'"  The trial court then quoted the relevant exchange between defendant and the judge who entered the JOD:

> Judge []:  The terms that I went through with [plaintiff] . . . is that your understanding of each and every term?
>
> [Defendant]:  Yes.
>
> [Judge:]  Is there anything else that I've missed in that document or some other understanding you have?
>
> [Defendant]:  No.
>
> Judge []:  . . . You both understand you have the right to go to [c]ourt and have me or another judge decide the issues for you, but you're deciding to waive that right based upon your [A]greement, is that correct?
>
> [Defendant]:  Correct.

Furthermore, the judge who entered the JOD addressed defendant's participation in negotiating the Agreement:

29

Judge []: What is your level of education [defendant]?

[Defendant]: High School.

Judge []: Did you understand this [A]greement . . . ?

[Defendant]: I do.

Judge []: Okay. And do you believe it is a fair and equitable resolution of all the issues?

[Defendant]: Yes.

Judge []: All right. Are you fully satisfied with the terms as they are outlined in this document?

[Defendant]: Yes.

Judge []: And was it an arms-length negotiation between the two of you?

[Defendant]: Yes.

Judge []: No other side deals or side agreements?

[Defendant]: No.

In view of defendant's testimony regarding the Agreement, we concur with the trial court's conclusion that the Agreement was not procedurally unconscionable. See Estate of Cohen, 421 N.J. Super at 157.

With regard to the issue of substantive unconscionability, the trial court emphasized: "[t]he fact that [d]efendant entered into an agreement to pay child support in excess of the guidelines in exchange for other considerations such as

a waiver of alimony by [p]laintiff alone does not render the agreement 'unjust, oppressive, or inequitable' to justify the extraordinary relief afforded under [Rule] 4[:]50-1."

On reconsideration, the trial court added:

> Defendant's rationale for this challenge to the parties' agreement was that "[n]ow that I have consulted with an attorney, I am told the JOD appears inequitable on its face." There was no information allegedly not known or available to the [d]efendant to explain why his delay in bringing this challenge.

We see no abuse of discretion in the trial court's conclusion that defendant has failed to prove the child support in the Agreement is substantively unconscionable, see Est. of Cohen, 421 N.J. Super. at 157.

Defendant further argues the trial court abused its discretion in denying defendant's request to reform parts of the Agreement that were the result of plaintiff's "overreaching." Defendant argues plaintiff overreached when she "encouraged [d]efendant to sign the house over to her, agree to terms in the [JOD] that were oppressive and impossible to honor, agree to close his business, and agree to sign over his unemployment benefits, taking advantage of his sense of guilt due to his affair and upon promises that she would only consider reconciliation if [d]efendant did all these things."

31

A separation agreement may be reformed when it is "the product of fraud or overreaching by a party with power to take advantage of a confidential relationship." Addesa, 392 N.J. Super. at 66 (citing Dworkin, 217 N.J. Super. at 523). Overreaching occurs when, during negotiations and execution of an agreement, one party with power takes advantage of a confidential relationship. Guglielmo v. Guglielmo, 253 N.J. Super. 531, 541 (App. Div. 1992) (citing Dworkin, 217 N.J. Super. at 523). Courts must ensure there was no "coercion, deception, fraud, undue pressure, or unseemly conduct, or [that] one party was not competent to voluntarily consent." N.H. v. H.H., 418 N.J. Super. 262, 282 (App. Div. 2011) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994)).

As we have noted, the judge who entered the JOD considered defendant's understanding of the Agreement. We repeat the portion of the colloquy in which defendant acknowledged there had been no overreaching by plaintiff, who, like defendant, was not represented by counsel:

> Judge []: . . . Are you fully satisfied with the terms as they are outlined in this document?
>
> [Defendant]: Yes.
>
> Judge []: And was it an arms-length negotiation between the two of you?

32

[Defendant]: Yes.

Judge []: No other side deals or side agreements?

[Defendant]: No.

Judge []: [Defendant], you were not coerced into entering into this agreement?

[Defendant]: No.

Judge []: Not under duress?

[Defendant]: No.

Based on this record, the trial court found:

> While [d]efendant now contends that he was relying on a misrepresentation by [p]laintiff that this [A]greement was a condition of the parties continuing their relationship, the record is clear that the [d]efendant testified at the time, under oath, that there were no "other side deals or agreements" with the parties' [A]greement, . . . that the [A]greement was negotiated, . . . and the parties desired for the terms of that [A]greement to be incorporated into a [JOD].

The trial court's conclusion is amply supported by defendant's sworn testimony that he understood the terms of the Agreement and was not under any coercion or duress to sign it. See N.H., 418 N.J. Super. at 282. Since defendant failed to establish that plaintiff was overreaching in negotiating and executing the agreement, the trial court did not abuse its discretion in rejecting defendant's

A-3969-22

contention the Agreement must be reformed.  See Guglielmo, 253 N.J. Super. at 541.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3969-22